**KOKUSAI ELECTRIC CO. LTD., Plaintiff,**

v.

**UNITED STATES, Defendant,**

**E.F. Johnson Company, Defendant-Intervenor.**

Nos. 85–02–00185, 85–02–00187.

United States Court of International Trade.

March 14, 1986.

See also, D.C., 613 F.Supp. 1249.

Arent, Fox, Kintner, Plotkin & Kahn (Margaret Roggensach, Washington, D.C., on motion), for plaintiff.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch (Wayne W. Herrington, Washington, D.C., on motion), for defendant.

Robins, Zelle, Larson & Kaplan (Jann L. Olsten, Esq., St. Paul, Minn., on motion) for defendant-intervenor.

CARMAN, Judge:

Plaintiff challenges in two separate law suits the determination of the United States Department of Commerce (Commerce), Court No. 85–02–00185, and the determination of the International Trade Commission (Commission), Court No. 85–02–00187. Since both cases arose out of the same facts and the same investigation they have been combined for the purposes of discussion in this opinion.

In Court No. 85–02–00185, the Commerce case, plaintiff moves pursuant to Rule 56.1 of the Rules of this Court for judgment on the agency record, contending the determination of Commerce pursuant to an antidumping petition that cell site transceivers imported from Japan were being sold or were likely to be sold at less than fair value (LTFV), extended to dedicated subassemblies, was not supported by substantial evidence and was otherwise not in accord with the law.[1] In Court No. 85–02–00187, the Commission case, plaintiff makes a similar motion challenging the Commission's determination in the same investigation that the LTFV imports are materially injuring an industry in the United States. Defendant United States and defendant-intervenor oppose the motions in each case. The Information and Telecommunications Technologies Group of the Electronic Industries Association appeared as *amicus*. For the reasons stated below, the determinations of both Commerce and the Commission are sustained.

FACTS

Defendant-intervenor filed on December 28, 1983 with Commerce and the Commission an antidumping petition captioned "In the Matter of Cell Site Transceivers and Subassemblies Thereof From Japan." The allegations in the petition and the Request for Relief complained of dumping of cell

---

1. Cell site transceivers and related subassemblies are part of radio frequency (RF) equipment in the base station (cell site) of a cellular radio communication system. Apparently the RF equipment functions as a locating receiver and provides simultaneous two way voice and data communication between the base station and the subscriber's mobile phone by using different frequencies to transmit and receive. Subassemblies are an assemblage of components dedicated for use in the cell-site transceivers which were the subject of the investigation. 49 Fed.Reg. 3100, 3101 (1984).

site transceivers from Japan. The petition contained no allegations with respect to related subassemblies as such. Court Nos. 85–02–00185 and 85–02–00187 Records at Doc. 1 (hereinafter Petition). On January 25, 1984 Commerce published notice of the initiation of its investigation. The notice was styled "Cell Site Transceivers and Related Subassemblies From Japan" and indicated the investigation was to determine whether cell site transceivers and related subassemblies from Japan were being or likely to be sold in the United States at less than fair value. 49 Fed.Reg. 3100 (1984). The preliminary determination of Commerce published on June 12, 1984, captioned "Cell Site Transceivers From Japan," indicated the investigation covered cell site transceivers and related subassemblies. 49 Fed.Reg. 24,155 (1984). The notice made an affirmative preliminary determination of sales at less than fair value as to cell site transceivers and ordered suspension of their liquidation. The final determination of Commerce published October 26, 1984, again captioned "Cell Site Transceivers From Japan," reiterated that the scope of the investigation included cell site transceivers and related subassemblies. 49 Fed. Reg. 43,080 (1984). The final determination found cell site transceivers from Japan were being sold in the United States at less than fair value. The overall weighted average margin on all sales compared was 59.94 percent. There was no separate determination pertaining to related subassemblies as such.

Subsequent to the publication of the preliminary determination of Commerce, the Commission commenced its final injury investigation by notice on July 5, 1984. 49 Fed.Reg. 27,641 (1984). In its final investigation the Commission issued questionnaires that separately identified cell site transceivers and subassemblies. Plaintiffs argued before the Commission that subassemblies should be excluded from its investigation or alternatively the Commission should make a negative injury determination in regard to importation of subassemblies, contending Commerce made no determination that subassemblies were being

sold at less than fair value. Court No. 85–0200185 Plaintiff's brief 9.

On November 27, 1984 staff members of the Commission questioned by phone the staff of Commerce to ascertain whether or not "related assemblies" of cell site transceivers were included within the investigation and final determination of Commerce. Commerce advised that the omission of subassemblies from the suspension of liquidation section of each of the notices in the Federal Register was in error and further indicated that import administration had contacted Customs to clarify that liquidation of entries from Japan of any subassemblies in question should be suspended and the duty for cell site transceivers should apply to subassemblies as well. Letter from Deputy Assistant Secretary for Import Administration, Commerce to Chairwoman Paula Stern, International Trade Commission, Pub. Doc. 143. (Exhibit 13, chronology of documents requested by Court at Oral Argument.)

In December 1984 the Commission published its determination in a report entitled "Cell-Site Transceivers and Subassemblies Thereof from Japan." U.S.I.T.C. Public. 1618, Investigation No. 731–TA–163 (Final) (1984). On January 3, 1985 Commerce published an antidumping duty order covering both cell site transceivers and related subassemblies. 50 Fed.Reg. 307 (1985).

As to Commerce's determination, plaintiff maintains that Commerce should not have included subassemblies in its final antidumping order on the following grounds:

1. The petition contained no allegations with respect to subassemblies and failed to request relief from subassembly imports, and Commerce improperly initiated its investigation covering cell site transceivers and related subassemblies.

2. Commerce did not make a final determination that subassemblies were the same class or kind of merchandise as cell site transceivers.

3. Commerce did not have legal authority to issue a final antidumping order that expanded the final determination to in-

clude subassemblies with cell site transceivers.

4. The record did not support a determination of sales at less than fair value with respect to subassemblies since the record established there were no sales of subassemblies during the period of investigation.

5. Plaintiff should not be barred by the doctrine of laches from asserting that subassemblies should not have been included in the final antidumping order because plaintiff acted in a timely manner and defendant-intervenor suffered no injury.

Defendant argues that since cell site transceivers and related subassemblies thereof were consistently defined as "one class or kind" of merchandise throughout the investigation, Commerce was not required to make a separate determination of less than fair value as to subassemblies for them to be covered by the final determination and antidumping orders. Defendant contends further that plaintiff is barred from challenging the inclusion of the subassemblies in the class or kind of merchandise because it failed to exhaust its administrative remedies by failing to raise the issue before Commerce during the investigation. Defendant-intervenor and the *amicus* support defendant's contentions.

As to the Commission's determination, plaintiff also maintains that the Commission should not have included subassemblies in its final injury determination on the following grounds:

1. Subassemblies were not properly included in the Commission's final investigation because Commerce made a determination of LTFV sales only with respect to cell site transceivers and not with respect to subassemblies.

2. The Commission's final determination of injury is not supported by substantial evidence on the record.

3. The doctrine of laches is inapplicable since plaintiff asserted its claim in a timely fashion and defendant-intervenor suffered no harm.

Defendant argues that Commerce's determination of LTFV sales included both cell site transceivers and subassemblies, and that the Commission properly considered subassemblies.

## OPINION

### I. *The Commerce Determination*

■ Antidumping duties are to be imposed if Commerce determines that:

> a class or kind of foreign merchandise is being, or is likely to be, sold in the United States at less than its fair value and the Commission determines that an industry in the United States is materially injured, or is threatened with material injury, or the establishment of an industry in the United States is materially retarded, by reason of imports of that merchandise.

19 U.S.C. § 1673 (1982). Procedures for the initiation of antidumping proceedings are set out at 19 U.S.C. § 1673a as follows:

> (a) **Initiation by administering authority.**—An antidumping duty investigation shall be commenced whenever the administering authority determines, from information available to it, that a formal investigation is warranted into the question of whether the elements necessary for the imposition of a duty ... exist.
>
> (b) **Initiation by petition.**—
>
> (1) **Petition requirements.**—An antidumping proceeding shall be commenced whenever an interested party ... files a petition with the administering authority, on behalf of an industry which alleges the elements necessary for the imposition of the duty imposed by section 1673 of this title, and which is accompanied by information reasonably available to the petitioner supporting those allegations. The petition may be amended at such time, and upon such conditions, as the administering authority and the Commission may permit.

While it might have been better practice for the petitioner to have made specific allegations in regard to "related subassemblies" in the petition, it is clear that the petition's sweeping description of cellular

technology and proposed cellular systems operations in the United States, together with its description of circumstances indicating sales at less than fair value, were sufficient to cover cell site transceivers as well as their related subassemblies. Petition at 7–18). At the beginning and throughout the investigatory process Commerce treated cell site transceivers and their related subassemblies as part of the same class or kind of merchandise. The Notice of Initiation of Investigation, 49 Fed.Reg. at 3100, the Preliminary Determination, 49 Fed.Reg. at 24,155, the Final Determination, 49 Fed.Reg at 43,081, and the Antidumping Duty Order, 50 Fed.Reg. at 307, all indicate the scope of the investigation covered "cell site transceivers and related subassemblies."

Moreover, Commerce's contacts with plaintiff during the course of the investigation indicate that the scope of the investigation included subassemblies. On March 2, 1984 Commerce sent plaintiff a request for information. The request was accompanied by a letter, which stated in part:

> We are presently conducting an antidumping investigation involving cell site transceivers and related subassemblies from Japan. The merchandise covered by this investigation is part of the radio frequency (RF) equipment in the base station (cell site) of a cellular radio communication system. This single package RF equipment functions as a locating receiver and provides simultaneous two-way voice and data communications between the base station and the subscriber's mobile telephone by using different frequencies to transmit and receive. Subassemblies are an assemblage of component parts dedicated for use in cell site transceivers as defined above. *Cell site transceivers and related subassemblies* are currently classified under item number 685.2976 of the *Tariff Schedules of the United States Annotated (TSUSA)*. For your convenience, we have enclosed a description of the applicable TSUSA items.

Court No. 85–02–00185 Record at Doc. 24 (emphasis added). The request for infor-

mation sent to plaintiff covered both cell site transceivers and related subassemblies. *Id.* at Doc. 23. Plaintiff responded to the portions of the questionnaire covering subassemblies, indicating that it had not sold cell site transceiver assemblies in the United States, third countries, or Japan. *Id.* at 38, response at 5. Furthermore, since the petitioner could not obtain samples of the merchandise and since plaintiff was presumably the only one that had them, no subassemblies having been imported into the United States, there was not adequate information in regard to the related subassemblies to enable the preparers of the petition to be more specific.

In any event plaintiff was aware from the very beginning that the antidumping investigation included the related subassemblies and that they were being treated by Commerce as the same class or kind of merchandise as cell site transceivers. At no time during the course of the investigation before Commerce, to and including the publication of the final determination, did plaintiff raise any question of whether or not subassemblies were included within the scope of the investigation or dispute. The fact that plaintiff endeavored to raise the issue before the publication of the final Order was of no effect since the issuance of the final antidumping Order was a ministerial act and not the final expression of the administrative determination. *Royal Business Machines, Inc. v. United States,* 1 CIT 80, 86, 507 F.Supp. 1007, 1012 (1980).

Plaintiff did raise the issue of whether or not the related subassemblies were included within the scope of the investigation; not before Commerce but before the Commission, which was in the process of making its final injury determination. Plaintiff clearly could have raised the issue before Commerce during the investigation and Commerce could have examined the objection to the scope of the investigation at that time. Instead, plaintiff slept on its rights. It did not raise the question until the matter reached the Commission. Laches would prevent plaintiff from raising the

issue after the final determination by Commerce.

The Court does not have to rely upon laches, however, since plaintiff clearly failed to exhaust its administrative remedies. Generally, a reviewing court would usurp the function of the agency if it were to set aside an administrative determination upon a ground not previously presented, thereby depriving the agency of a chance to consider the matter. *Unemployment Compensation Commission of Alaska v. Aragon*, 329 U.S. 143, 145, 67 S.Ct. 245, 246, 91 L.Ed. 136 (1946). It has been stated:

> The law is not in accord either with an absolute statement that a reviewing court may not decide an issue not raised before the agency or with an absolute statement that a reviewing court may decide such an issue. The law is that the reviewing court has power to exercise discretion in the light of the circumstances and the court's idea as to what justice requires.

4. K. Davis, Administrative Law Treatise, § 26:7 at p. 444 (2d ed. 1983).[2]

■ The Court holds that in the absence of extraordinary circumstances excusing the neglect to raise before Commerce the issue whether or not the related subassemblies were within the scope of the investigation, the Court will not permit the plaintiff to raise the issue after Commerce closed its investigation. The Court finds

not only did plaintiff fail to offer an excuse for not raising the issue before Commerce, but further plaintiff participated in the Commerce investigation proceedings as though related subassemblies were within the scope of the investigation. Plaintiff cannot be heard to complain at this juncture in the proceedings that the issue, which it wished to have considered but never brought up before Commerce, did not receive full consideration.

Even if the petition had been insufficient, Commerce had the authority to self-initiate an antidumping investigation as to the related subassemblies to determine whether or not the elements necessary for the imposition of duties existed. *See* 19 U.S.C. § 1673a(a)(1982). Commerce also has power to reconsider decisions to initiate an investigation into alleged violations of antidumping regulations. *Gilmore Steel Corp. v. United States*, 7 CIT ——, 585 F.Supp. 670 (1984).

As to plaintiff's motion for judgment upon the agency record regarding Commerce's determination, Court No. 85–02–00185, the Court holds:

(1) The allegations in the petition were sufficient and included subassemblies. Even if the petition were inadequate under the circumstances of this case Commerce had the power to self-initiate an investigation of related subassemblies.

---

**2.** The Trade Agreements Act of 1979, eliminated *de novo* review and provided that judicial review under the antidumping and the countervailing duty law be upon the administrative record. 19 U.S.C. §§ 1516a(a)(2) and (b)(1)(B). The legislative history of the Act is interesting. H.R.Rep. No. 317, 96th Cong., 1st Sess. 181 (1979) states:

> The Bill further amends present law to eliminate *de novo* review of determinations or assessments made pursuant to the antidumping and countervailing duty laws. The present standard of *de novo* review is both time consuming and duplicative. The rationale for *de novo* review is the need to safeguard the rights of all parties to an antidumping and countervailing duty proceedings [sic] which are informal and nonadversial and not subject to Administrative Procedure Act (APA) requirements. However, the amendments

made by Title I of the Bill providing for substantially increased access by all parties to information upon which the decision of the administering authority or the ITC is based together with the requirement of a record of the proceedings has removed the need for review of this type. Therefore, the Bill generally provides for a standard of review whereby the administrative level determination is upheld unless unsupported by substantial evidence on the record. Reviewable interlocutory determinations as well as final determinations made so early in the proceedings as to preclude the development of an adequate record, e.g., a determination not to initiate an investigation upon a receipt of a petition, will be upheld unless found to be arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law.

(2) The final determination of Commerce included subassemblies as the same class or kind of merchandise as cell site transceivers.

(3) Commerce had the legal authority to issue the final dumping order which implemented its final determination and included subassemblies with cell site transceivers in implementing the final determination.

(4) The record amply supports a determination of sales at less than fair value with respect to subassemblies since they were treated as one class or kind of merchandise throughout the investigation.

(5) Although plaintiff would ordinarily be barred by the doctrine of laches from asserting that subassemblies should not have been included in the final antidumping order because plaintiff failed to act in a timely manner by raising the issue before Commerce, the failure by plaintiff to exhaust its administrative remedies by raising the issue before Commerce precludes plaintiff from raising the issue before this Court.

## II. *The Commission Determination*

■ When Commerce makes an affirmative determination that merchandise is being dumped, it is required to notify the Commission immediately and "make available to the Commission such information as it may have relating to the matter under investigation." 19 U.S.C. § 1673a(d) (1982). In making its final injury determination, the Commission is governed by 19 U.S.C. § 1673d(b)(1), which provides in relevant part:

(1) **In General.**—The Commission shall make a final determination of whether an industry in the United States is materially injured, or is threatened with material injury, or the establishment of an industry in the United States is materially retarded, *by reason of imports of the merchandise with respect to which the administering authority has made an affirmative determination* under sub-

section (a)(1) of this section. (Emphasis added.)

Plaintiff's first challenge to the Commission's determination in this case is that the Commission improperly considered subassemblies in its investigation because the subassemblies were not properly included in Commerce's determination. Since the Court finds that Commerce's determination did properly encompass subassemblies, plaintiff's first challenge must fail. The Commission had before it a determination of Commerce that included subassemblies as well as cell site transceivers, and therefore the Commission properly considered those subassemblies.

Plaintiff also argues that the Commission's determination as to subassemblies is not supported by substantial evidence in the record because the Commission did not make separate findings of fact or conclusions of law regarding subassemblies. As noted earlier, Commerce's investigation treated the subassemblies as the same class or kind of merchandise as cell site transceivers. The Commission in its determination therefore properly investigated injury to only one domestic industry—the industry producing cell site transceivers and related subassemblies. The Commission was not required to make separate findings of fact as to subassemblies as its investigation covered only one industry. Moreover, it is clear from the record that the Commission had before it information regarding both cell site transceivers and their related subassemblies.

Because the Court finds that the Commission's determination is supported by substantial evidence on the record and in accordance with law, it is unnecessary to address the question whether plaintiff's challenge is barred by laches. Accordingly, the Court holds:

(1) The Commission properly considered cell site transceiver subassemblies because they were within the scope of Commerce's determination.

(2) The Commission's determination that a domestic industry is injured is supported by substantial evidence on the

record because the Commission properly treated the manufacture of cell site transceivers and related subassemblies as one industry and had before it information regarding both.

### III. *Conclusion*

Both Commerce's determination, challenged in Court No. 84–02–00185, and the Commission's determination, challenged in Court No. 84–02–00187, are supported by substantial evidence on the record and otherwise in accordance with law. Both determinations are therefore sustained, and plaintiff's motions in both cases are denied.