**The BUDD COMPANY, WHEEL & BRAKE DIVISION, Plaintiff,**

v.

**The UNITED STATES, Defendant,**

**and**

**FNV Veiculos E Equipamentos S.A., Defendant–Intervenor.**

**Court No. 88–09–00725.**

United States Court of International Trade.

Sept. 5, 1991.

**1550**

Barnes, Richardson & Colburn, James H. Lundquist, Matthew T. McGrath, and Peter A. Martin, New York City, Herman Foster, Associate Gen. Counsel, The Budd Co., Troy, Mich., for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, A. David Lafer, Office of Chief Counsel for Import Admin., U.S. Dept. of Commerce (Tanya J. Potter, Atty.–Advisor, Washington, D.C., of counsel), for defendant.

Willkie Farr & Gallagher, (William H. Barringer, Christopher Dunn, Daniel L. Porter, and Noel Hemmendinger, Washington, D.C., of counsel), for defendant-intervenor.

## MEMORANDUM OPINION

CARMAN, Acting Chief Judge:

Plaintiff moves for judgment upon the agency record pursuant to Rule 56.1 of the Rules of this Court contesting the amended final antidumping duty determination of the International Trade Administration, United States Department of Commerce ("Commerce" or "Department") in *Amended Final Determination of Sales at Less Than Fair Value and Amended Antidumping Duty Order; Tubeless Steel Disc Wheels From Brazil*, 53 Fed.Reg. 34,566 (Sept. 7, 1988) (*"Amended Final Determination"*). Defendant opposing the motion seeks to sustain the determination as supported by substantial evidence on the administrative record and as otherwise in accordance with law. Defendant–Intervenor joins defendant.

## BACKGROUND

On May 23, 1986, The Budd Company, Wheel and Brake Division ("Budd") filed a petition with Commerce alleging that Brazilian imports of tubeless steel disc wheels ("TSDWs") were being, or were likely to be, sold in the United States for less than fair value and that such imports materially injured, or threatened material injury to, a United States industry.

Following its investigation of two Brazilian companies, Borlem S.A.–Empreedimentos Industriais ("Borlem") and FNV–Veiculos E Equipamentos S.A. ("FNV"), Commerce issued its *Final Determination of Sales at Less Than Fair Value; Tubeless Steel Disc Wheels From Brazil*, 52 Fed. Reg. 8947 (Mar. 20, 1987), as amended, 52 Fed.Reg. 19,903 (May 28, 1987).

As a result of this determination, Commerce ordered an antidumping duty margin of 15.25% *ad valorem* for Borlem and 11.71% *ad valorem* for FNV. Following publication of Commerce's antidumping duty order, Borlem and FNV filed a complaint in this Court challenging Commerce's determination. Borlem and FNV alleged that Commerce's use of constructed value for the month of export and an exchange rate for the date of sale created artificial dump-

ing margins and was, therefore, not supported by substantial evidence on the record and was otherwise not in accordance with law. Commerce agreed that the margins were not calculated in a manner consistent with the purpose of the antidumping laws and requested a remand. On June 15, 1988, the Court directed Commerce to recalculate the antidumping margin and to publish its remand determination. *Borlem, S.A. Empreedimentos Industrials v. United States*, 12 CIT 563, 1988 WL 63336 (1988).

On remand, Commerce adjusted constructed value to take into account the effect of Brazil's hyperinflation. Specifically, Commerce made an adjustment for differences in circumstances of sale to constructed value to allow for the additional Brazilian cruzeiros needed to purchase dollars after the date of sale of the merchandise under investigation. *Amended Final Determination*, 53 Fed.Reg at 34,566.

In the amended final determination, Commerce found a weighted-average antidumping duty margin of 10.84% *ad valorem* for Borlem, of 0.04% *ad valorem* for FNV, and of 10.84% *ad valorem* for all others. 53 Fed.Reg. at 34,569. Because Commerce deems any rate less than 0.5% to be *de minimis* pursuant to 19 C.F.R. § 353.24 (1988), Commerce directed the United States Customs Service to terminate the suspension of liquidation for all of FNV's entries of TSDWs from Brazil that were entered, or withdrawn from warehouse, for consumption on or after April 29, 1987, and to refund all previously deposited estimated antidumping duties. 53 Fed.Reg. at 34,-569.

Subsequently, Budd filed a complaint contesting the amended final determination. Thereafter, Plaintiff moved for partial judgment upon the agency record, challenging the circumstance of sale adjustment described in the amended final determination published by Commerce on September 7, 1988. In that action, the Court dismissed counts two and eleven of Plaintiff's complaint for partial judgment upon the agency record, pursuant to Rule 56.1 of the Rules of this Court, which contested Commerce's amended final antidumping duty determination. *Budd Co. Wheel & Brake Div. v. United States*, 14 CIT ——, 746 F.Supp. 1093 (1990).

In *Budd* this Court held that "Commerce's determination to use a circumstance of sale adjustment was reasonable, in accordance with law and based upon substantial evidence." *Budd*, 14 CIT ——, 746 F.Supp. at 1103. Plaintiff contends that while this Court concluded that the Department's use of a circumstance of sale adjustment was not contrary to law because "Commerce did not exercise its discretion in a manner that violated the mandates of the statutory scheme, its regulations or the legislative intent underlying the antidumping laws in utilizing a circumstance of sale adjustment to adjust foreign market value," *id.*, the Court made no finding with respect to the underlying assumptions which the Department relied upon in order to make the adjustment. Therefore, Plaintiff has addressed these underlying assumptions in its current motion for judgment upon the agency record which covers the remaining counts of its amended complaint now before this Court.

## CONTENTIONS OF THE PARTIES

Plaintiff contends that under this Court's standard of review, Commerce's amended final determination is not supported by substantial evidence on the record and is not in accordance with law.

Chiefly, Plaintiff argues that Commerce should have, but failed to, account for the full effects of inflation when it made a circumstance of sale adjustment to constructed value to capture the full effects of devaluation. According to Plaintiff, the administrative record fails to show any evidence that Commerce fully accounted for inflation in the cost factors forming the basis of its constructed value methodology. These costs include general and administrative expenses, selling and packing expenses, quarterly labor rates, factory overhead, and short-term financial expenses.

Plaintiff further argues that the record bears no evidence that Commerce included certain key elements in its methodology:

research and development, long-term financial expenses, and taxes on steel inputs. Here, Plaintiff contends that internal taxes paid by Borlem and FNV on steel inputs, although rebated, are a significant opportunity cost that should be factored into Commerce's constructed value/replacement cost calculations. In addition, Plaintiff asserts that Commerce erroneously and arbitrarily assumed that internal consumption taxes fully passed-through to the Brazilian consumer.

For the above reasons, argues Plaintiff, Commerce understated the constructed value and, hence, the antidumping duty margin for Borlem and FNV. Plaintiff maintains that Commerce failed to effect the statutorily mandated fair value comparison between Brazilian home market value and United States price; therefore, the amended determination is unreasonable and not in accordance with law. Therefore, asserts Plaintiff, this Court should remand the determination and order Commerce to (1) modify its methodology to account for full inflation in all cost factors and (2) amplify the administrative record to adequately explain the methodology employed.

Defendant and Defendant–Intervenor respond to Plaintiff's contentions with two main arguments. First, Defendant and Defendant–Intervenor contend that Plaintiff's arguments for inflationary adjustments are meritless. Both explain that replacement cost and constructed value calculations, based on six one-month periods, captured the current costs of producing TSDWs and reflected the economic condition then experienced by the Brazilian companies. Furthermore, the cost data pertaining to various expenses of the two foreign companies investigated, such as labor, factory overhead, packing, and interest expense already represented the "current" cost information of the investigated companies for which no inflationary adjustment was necessary. Thus, they assert, further inflationary adjustment is not appropriate. Likewise, they dismiss Plaintiff's contention that the administrative record is inadequate. Defendant–Intervenor devotes a major portion of its brief explaining how, as reflected in the record, Commerce's methodology accounted for inflationary effects on the cost of production.

Second, Defendant and Defendant–Intervenor argue that Plaintiff has failed to exhaust its administrative remedies with respect to various arguments on Brazilian taxes. Defendant and Defendant–Intervenor emphasize that, on remand, Commerce accepted briefs and heard oral argument at open hearings so that all parties could cooperatively determine the proper methodology for an amended final determination. Plaintiff Budd was afforded the opportunity twice, but it failed, to raise any of its present arguments at the appropriate administrative level. Defendant claims that this tactical decision on Plaintiff's part now unduly prejudices Commerce, because Defendant never had the opportunity to investigate the matter and make a corresponding determination.

In sum, Defendant and Defendant–Intervenor refer to *Budd*, 14 CIT ——, 746 F.Supp. at 1093, in which this Court held that the circumstance of sale adjustment and methodology employed by Commerce was a reasonable means of effecting a fair value comparison in this case. Defendant and Defendant–Intervenor assert that if Plaintiff had any further complaints respecting methodology, it had ample opportunity to raise them before Commerce and to comply with the exhaustion of administrative remedies principle.

## STANDARD OF REVIEW

■ Pursuant to the Tariff Act of 1930 ("Act"), in reviewing a final determination of the International Trade Administration, this Court must uphold that determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence has been defined as being "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (quoting *Consolidated Ed-*

ison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). When applying the substantial evidence standard "[t]he court may not substitute its judgment for that of the [agency] when the choice is 'between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo ....'*" *American Spring Wire Corp. v. United States*, 8 CIT 20, 22, 590 F.Supp. 1273, 1276 (1984), *aff'd sub nom. Armco, Inc. v. United States*, 3 Fed.Cir. (T) 123, 760 F.2d 249 (1985) (quoting *Universal Camera*, 340 U.S. at 488, 71 S.Ct. at 465)).

In applying this standard, the Court has stated that:

> As long as the agency's methodology and procedures are reasonable means of effectuating the statutory purpose, and there is substantial evidence in the record supporting the agency's conclusions, the court will not impose its own views as to the sufficiency of the agency's investigation or question the agency's methodology.

*Ceramica Regiomontana, S.A. v. United States*, 10 CIT 399, 404–05, 636 F.Supp. 961, 966 (1986), *aff'd* 5 Fed.Cir. (T) 77, 810 F.2d 1137 (1987). Thus, this Court and the Court of Appeals for the Federal Circuit have consistently deferred to Commerce's findings under the antidumping duty laws. *Tai Yang Metal Indus. Co. v. United States*, 13 CIT ——, 712 F.Supp. 973 (1989); *Smith–Corona Group v. United States*, 1 Fed.Cir. (T) 130, 713 F.2d 1568 (1983), *cert. denied* 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984).

## DISCUSSION

### The Methodology Employed Is Lawful and Reasonable

■ The Tariff Act of 1930 authorizes and requires Commerce to adjust United States price and foreign market value to make a fair comparison. 19 U.S.C. §§ 1677a(d)–(e) and 1677b(a)(4) (1988); *Smith–Corona Group v. United States*, 1 Fed.Cir. (T) at 132, 713 F.2d at 1572. This Court has ruled that effectuating a fair comparison is Commerce's "overriding duty" in antidumping evaluations and that Commerce's methodology is lawful when serving that primary goal. *Budd*, 14 CIT ——, 746 F.Supp. at 1100.

This Court finds that in making a fair comparison, Commerce complied at each step with statutory directives and its own regulations. The *Amended Final Determination* provides in pertinent part:

> In this investigation, in order to capture the effects of Brazil's hyperinflation, we constructed foreign market value for six different one-month periods by using replacement costs for the month of shipment. We then converted the foreign market value into United States currency using the exchange rate in effect for the date of sale in accordance with § 353.56(a)(1) of our regulations.
>
> . . . .
>
> We also calculate constructed value under our usual methodology by using a company's historic costs. However, when a country's economy experiences hyperinflation, we use replacement costs. (citations omitted.) This practice allows the Department to view costs and prices contemporaneously in order to avoid distortions caused by hyperinflation and achieve a fairer comparison. Foreign market value thus was calculated, in part, by using replacement value for raw materials based on actual purchases in a month, or, if actual purchases were not made, on the price list provided by respondents. 52 Fed.Reg. at 8947, 8948.
>
> ... In this investigation, Commerce verified that there were long time periods between the reported dates of sale and the reported dates of shipment for the tubeless steel disc wheels. As explained below, this lag time between date of sale and date of shipment in conjunction with Brazil's hyperinflation gave rise to the problem which we now, through a circumstance of sale adjustment, seek to remedy.
>
> . . . .
>
> ... The circumstance of sale adjustment defined below eliminates the artificial distortion of value caused by the rapid depreciation of Brazil's currency

and thus more accurately provides a measure of whether dumping is occurring.

*Amended Final Determination, supra,* at 34,566.

A review of Commerce's methodology yields the conclusion that the amended final determination is fair, consistent with statutorily prescribed procedures, and substantiated by the administrative record. This Court reached the same conclusion in its opinion dated September 5, 1990, dismissing Plaintiff's motion for partial judgment upon the agency record and sustaining the determination as amended through a circumstance of sale adjustment. *Budd,* 14 CIT ——, 746 F.Supp. at 1093.

In support of its present 56.1 motion, Plaintiff has provided no sound basis for this Court to set aside the determination of Commerce. The Court reviewed the procedures employed by Commerce in dismissing Plaintiff's previous motion for partial judgement upon the agency record, where this Court ruled that Commerce's methodology was lawful and reasonable. In its brief and at oral argument in the instant motion, Plaintiff has not explained what it is that Commerce has failed to do in accordance with law.

Throughout its brief, Plaintiff repeats the same conclusion again and again: It is unreasonable that Commerce did not account for full inflation in the cost factors [1] forming the basis of its constructed value methodology, whereas it did account for full devaluation occurring between the date of sale and the date of exportation. Therefore, according to Plaintiff, because the record bears no evidence of further inflationary adjustment, the amended final determination is not based upon substantial evidence. Plaintiff insists that under this Court's standard of review, the record is inadequate to support Commerce's findings, and the determination should be remanded.

The glaring deficiency in Plaintiff's argument is the underlying premise that full accounting for inflation is necessary or even possible. Plaintiff has never explained how this is so or why Commerce's replacement cost/constructed value methodology does not adequately account for the effects of inflation on the costs of producing TSDWs in Brazil. This flaw becomes all the more prominent in light of the fact that Plaintiff abandoned this reasoning at oral argument, proposing instead that Commerce's methodology overaccounted for inflation and that Defendant should recalculate the circumstance of sale adjustment to balance devaluation with that accounting. Transcript of Oral Argument ("Tr.") at 37–38 (June 27, 1991). Simply, Plaintiff presents an inconsistent and weak argument before this Court, failing to justify a second remand of this determination on the grounds that Commerce's methodology renders the amended final determination unlawful. Again, the Court defers to the findings of the Commerce Department.

### *Plaintiff Failed to Exhaust its Administrative Remedies*

■ Section 2637(d) of Title 28, United States Code, directs this Court to require, where appropriate, the exhaustion of administrative remedies. 28 U.S.C. § 2637(d) (1988). It is well established that "[a] reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the [agency] of an opportunity to consider the matter, make its ruling, and state the reasons for its action." *Unemployment Compensation Comm'n of Alaska v. Aragon,* 329 U.S. 143, 155, 67 S.Ct. 245, 251, 91 L.Ed. 136 (1946); *see United States v. L.A. Tucker Truck Lines, Inc.,* 344 U.S. 33, 36–37, 73 S.Ct. 67, 68–69, 97 L.Ed. 54 (1952); *Kokusai Electric Co. v. United States,* 10 CIT 166, 171–72, 632 F.Supp. 23, 28 (1986).

■ The law makes very limited exceptions to the exhaustion requirement in cases where strict enforcement would be

---

1. The cost factors examined in this case are: general selling and administrative expenses; direct selling and packing expenses; factory overhead; labor; long and short-term financial expenses; and internal taxes.

inappropriate.[2] Plaintiff's case, however, does not fit within any of these exceptions. For example, Budd's present arguments are not purely legal issues requiring no further agency involvement. On the contrary, Plaintiff seeks a second remand, requiring Commerce to recalculate the circumstance of sale adjustment for devaluation and to conduct an absorption study measuring the incidence of tax pass-through to the Brazilian consumer.

Relying on the futility exception as a defense, Plaintiff nonetheless conceded at oral argument that Commerce never refused to hear its contentions. Tr. at 67. Plaintiff did not attempt to raise its present line of argument before Commerce on the assumption that Commerce would not be amenable to its proposals. *Id.* This is no excuse for Plaintiff's not exhausting its administrative remedies.

Specifically, Plaintiff introduces in its brief a new line of argument, that replacement cost methodology does not account for full inflation, thereby understating constructed value. Commerce complied with the law in giving Plaintiff every opportunity to present this argument at the appropriate administrative level, accepting parties' briefs and hearing oral argument at public hearings. 19 U.S.C. § 1677c (1988). Nonetheless, Plaintiff failed on three occasions during the two and one-half months of remand proceedings to raise the inflationary adjustment issue. On July 12, 1988, Plaintiff met with Commerce officials to present its position on the amended final determination and did not use that opportunity to make its current argument for the record.[3] Two weeks later, Plaintiff filed its comments on the released draft amended determination, again foregoing a chance to challenge Commerce's methodology.[4] Finally, Plaintiff submitted rebuttal to comments that FNV and Borlem filed on the determination, and nowhere in its remarks did Plaintiff contest replacement cost/constructed value methodology.[5]

■ This Court concludes that Plaintiff declined to raise its contentions at the administrative level as an apparent tactical decision. Plaintiff is now precluded from raising these issues *de novo* before the Court. This Court holds that a failure to enforce the exhaustion of administrative remedies principle could lead to "frequent and deliberate flouting of the administrative processes [that] could weaken the effectiveness of an agency by encouraging people to ignore [administrative] procedures." *McKart v. United States*, 395 U.S. 185, 195, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969). The courts require exhaustion of administrative remedies to ensure that the agency and the interested parties fully develop the facts to aid judicial review. *Andrade v. Lauer*, 729 F.2d 1475, 1484

---

**2.** The following are examples of cases where the Court has not required exhaustion of administrative remedies.

1. Plaintiff raised a new argument that was purely legal and required no further agency involvement. *See Rhone Poulenc, S.A. v. United States*, 7 CIT 133, 136, 583 F.Supp. 607, 611 (1984); *Seattle Marine Fishing Supply Co. v. United States*, 12 CIT 60, 74, 679 F.Supp. 1119, 1130 (1988); *Hercules, Inc. v. United States*, 11 CIT 710, 735, 673 F.Supp. 454, 476 (1987).
2. Plaintiff did not have timely access to the confidential record. *See Philipp Bros. v. United States*, 10 CIT 76, 78, 630 F.Supp. 1317, 1320 (1986).
3. A judicial interpretation intervened since the remand proceeding changing the agency result. *See Timken Co. v. United States*, 10 CIT 86, 92–93, 630 F.Supp. 1327, 1334 (1986); *Ceramica Regiomontana, S.A. v. United States*, 14 CIT ——, Slip Op. 90–107 at 5, 1990 WL

160253 (Oct. 17, 1990); *Rhone Poulenc*, 7 CIT at 134–35, 583 F.Supp. at 609–10.
**4.** It would have been futile for plaintiff to have raised its argument at the administrative level. *Rhone Poulenc*, 7 CIT at 135, 583 F.Supp. at 610–11; *Ceramica Regiomontana*, Slip Op. 90–107 at 4, 1990 WL 160253; *PPG Indus., Inc. v. United States*, 14 CIT ——, 746 F.Supp. 119, 137 (1990). *See also Alhambra Foundry Co. v. United States*, 12 CIT 343, 347, 685 F.Supp. 1252, 1256 (1988).

**3.** *Memorandum From Matthew P. Jaffe* (July 13, 1988), *in* Administrative Record ("A.R."), at 1.

**4.** *Letter to the Honorable Jan W. Mares, Assistant Secretary for Import Administration* (July 28, 1988), *in* A.R., at 5.

**5.** *Letter to Jan Mares, Assistant Secretary for Import Administration* (Aug. 1, 1988), *in* A.R., at 7. (responding to Comments on Remand Determination).

(D.C.Cir.1984). Ultimately, applying the exhaustion principle promotes judicial economy by avoiding duplication of fact-finding and, sometimes, judicial involvement altogether. *Id.* For these reasons, the Court dismisses Plaintiff's present motion. Setting aside the exhaustion requirement in this case would unduly prejudice Defendant and Defendant–Intervenor because neither party had an opportunity to be heard concerning these matters at the administrative level.

This Court rejects Plaintiff's claim that the exhaustion requirement is inapplicable in this case. Plaintiff's reasoning is that its present challenge, that Commerce failed to account for full inflation, is "merely an alternative conceptualization of the issues which have been debated in this case." Plaintiff's Reply Brief at 16. Plaintiff cannot reasonably equate its previous circumstance of sale contentions with the present arguments about inflation and tax pass-through. As Defendant–Intervenor aptly responds, Plaintiff cannot equate the two sets of issues because Budd's first action before this Court challenged what Commerce *did* in the amended final determination. In the present action, however, Plaintiff is challenging what Commerce *did not do.* Defendant–Intervenor's Brief at 4.

Failing to convince the Court in its first action that the amended final determination is not in accordance with law, Plaintiff now seeks to collaterally attack that ruling. This is apparent from Plaintiff's oral argument, which departed significantly from the position it took in its brief. Whereas Plaintiff's Brief asserts throughout that replacement cost methodology nullifies the effects of inflation, Counsel for Plaintiff stated at oral argument that this methodology not only accounts for inflation but actually overaccounts for it in the cost of producing TSDWs in Brazil. Tr. at 64.

As provided in the 1979 Trade Agreements Act, this Court must review Commerce's determinations on the record, rather than *de novo*, to avoid duplicative fact-finding. S.Rep. No. 249, 96th Cong., 1st Sess. 251 (1979), U.S.Code Cong. & Admin.News 1979, pp. 381, 636. In this case, not requiring Plaintiff to exhaust its administrative remedies makes utterly meaningless the "substantial evidence on the record" standard of review.

### CONCLUSION

In accordance with the foregoing, this Court concludes that Commerce's amended final determination in its entirety was reasonable, in accordance with law, and based upon substantial evidence on the record. Accordingly, Plaintiff's Rule 56.1 motion for judgment upon the agency record is denied. Commerce's amended final determination is sustained in its entirety. This action is dismissed.