**USINOR SACILOR, Sollac and GTS, Plaintiffs,**

v.

**UNITED STATES, Defendant,**

and

**Inland Steel Industries, Inc., AK Steel Corp., Bethlehem Steel Corp., Geneva Steel, Gulf States Steel Inc. of Alabama, Laclede Steel Corp., LTV Steel Corp., Inc., National Steel Corp., Sharon Steel Corp., U.S. Steel Group A Unit of USX Corp., and WCI Steel, Inc., Defendant–Intervenors.**

**Slip Op. No. 95–177.**

Ct. No. 93–09–00592–AD.

United States Court of International Trade.

Nov. 9, 1995.

---

Weil, Gotshal & Manges (A. Paul Victor and Martin S. Applebaum) New York City, for plaintiffs.

Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Velta A. Melnbrencis), Terrence J. McCartin, Office of Chief Counsel for Import Administration, United States Department of Commerce, of counsel, Washington, DC, for defendant.

Dewey Ballantine (Alan Wm. Wolff, Michael H. Stein, Guy C. Smith, and Kristen M. Neller), Washington, DC, for defendant-intervenors.

Skadden, Arps, Slate, Meagher & Flom (Robert E. Lighthizer and John J. Mangan), Washington, D.C., for defendant-intervenors.

## MEMORANDUM OPINION AND ORDER

DiCARLO, Chief Judge:

Plaintiffs Usinor Sacilor and its subsidiaries, Sollac and GTS (collectively Usinor), challenge certain aspects of the *Redeterminations on Remand: Certain Hot–Rolled Carbon Steel Flat Products, Certain Cold–Rolled Carbon Steel Flat Products, Certain Corrosion–Resistant Carbon Steel Flat Products, and Certain Cut–To–Length Carbon Steel Plate From France* (Dep't Comm.1995) (*Remand Determination*). This court has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2) (1994) and 28 U.S.C. § 1581(c) (1988).

## BACKGROUND

In *Usinor Sacilor v. United States,* 18 CIT —, 872 F.Supp. 1000 (1994), the court re-

manded Commerce's determination pertaining to certain steel products from France. *See Certain Hot–Rolled Carbon Steel Flat Products, Certain Cold–Rolled Carbon Steel Flat Products, Certain Corrosion–Resistant Carbon Steel Flat Products, and Certain Cut-to-Length Carbon Steel Plate From France,* 58 Fed.Reg. 37,125 (Dep't Comm. 1993), *amended by* 58 Fed.Reg. 44,169 (Dep't Comm.1993) (*Final Determination* ).

In the underlying investigation, Usinor had reported downstream home-market sales to unrelated customers from secondary steel centers in which it held a majority interest. The data was flawed, however, because Usinor was unable to ascertain what portion of those downstream sales involved Usinor's products. The court upheld Commerce's decision to reject this data and apply Best Information Available (BIA) in its place, although the court determined that Commerce's selection of the highest non-aberrant margin as BIA was inappropriate. *See Usinor,* 18 CIT at ——, 872 F.Supp. at 1007.

Furthermore, Usinor did not report the home-market sales of the subsidiaries in which it held a minority interest. Because Commerce never determined whether Usinor held operational control over these subsidiaries, the court instructed Commerce to review this question on remand. If Commerce were to find that Usinor did not have operational control, the court directed that Commerce was to select and apply the weighted average calculated margin as BIA. If Commerce instead were to find that Usinor did maintain operational control, then Commerce would be permitted to reapply the highest non-aberrant margin as BIA in a manner consistent with the court's decision in *National Steel Corp. v. United States,* 18 CIT ——, 870 F.Supp. 1130 (1994).

The court also addressed the issue of Usinor's product concordance errors. Commerce's potentially misleading instructions led Usinor incorrectly to place level of trade before physical similarity in constructing its product concordance. Accordingly, the court directed Commerce to accept Usinor's revised product concordance rather than resort to BIA for sales affected by the concordance errors.

Finally, the court considered Usinor's error in incorrectly assigning product codes for Grade E–24 hot-rolled carbon steel in the U.S. and home markets. Usinor had coded the product according to its actual yield strength rather than industry-standard yield strengths printed on the product sheet. The court noted that Commerce's instructions were unclear with respect to which standard Commerce required. As a result, the court directed Commerce either to allow Usinor to reclassify the product according to industry standards, or to accept Usinor's actual yield strength data, in lieu of applying the highest non-aberrant margin as BIA.

The issues presented in this action upon remand are (1) whether Commerce applied an appropriate measure of BIA for Usinor's unmatched downstream sales from related steel service centers and (2) whether Usinor's challenge to Commerce's selection and use of BIA extended to Usinor's unreported U.S. sales and sales involving systematic coding errors other than Grade E–24 steel.

## DISCUSSION

The court will uphold Commerce's final determination in an antidumping duty investigation unless that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i) (1994). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)).

## 1. The Weighted Average Calculated Margin

In its *Remand Determination,* Commerce found that Usinor did not have operational control over the related steel centers in which it held a minority interest. Therefore, Commerce, in accordance with the court's instructions in *Usinor,* was required to apply the weighted average calculated margin as BIA for Usinor's unmatched downstream sales from related secondary steel centers. *See Usinor,* 18 CIT at ——, 872 F.Supp. at 1007.

■ Commerce argues that it applied a neutral weighted average calculated margin on remand as non-adverse BIA for all affected downstream sales. *See Remand Determination* at 5. According to defendant, this "neutral" BIA margin includes (1) individual price-to-price margins, (2) price-to-constructed value margins, and (3) highest non-aberrant margins. (*See* Def.'s Resp. to Pls.' Comments on the Remand Det. at 8–9.) Commerce further claims that its version of the weighted average calculated margin "achieves the neutral purpose of this BIA, as it coincides with the margin that the respondent would have otherwise received." *Remand Determination* at 5.

The court does not agree that Commerce's application of its weighted average calculated margin yields a neutral measure of BIA. First, Commerce simply asserts that its margin is neutral. It does not cite any evidence in the record that would make clear what the margin Usinor "would have otherwise received" actually is or how Commerce would arrive at that figure. *See id.* This is problematic, especially as Commerce initially, and incorrectly, applied the highest non-aberrant margin to all of Usinor's unmatched downstream sales. *See Usinor*, 18 CIT at —, 872 F.Supp. at 1007; *Remand Determination* at 6–10. Second, to suggest that the express inclusion of the very adverse, highest non-aberrant margin in a weighted value could, in the end, provide a neutral result is unreasonable. The overwhelming majority of Usinor's U.S. sales had margins below the various selected rates for Usinor's products under review, (*see* Conf. Doc. 97, Pls.' Mem. in Supp. of J. on the Agency R., at Attach. 1; Conf. Doc. 91, Letter from Usinor to Commerce of 7/1/93, at 4,) demonstrating the adverse nature of the highest non-aberrant margins being used to derive Commerce's weighted average calculation.

In *Usinor*, the court recognized the need for Commerce to resort to BIA with respect to Usinor's downstream sales because of the inherent unreliability of Usinor's home-market sales data. However, the court further emphasized that Usinor was a cooperative respondent that had substantially complied with Commerce's data requests. It "supplied more data than was required under the limit-

ed reporting arrangement and provided well over 99% of the data demanded by the original questionnaire." *See Usinor*, 18 CIT at —, 872 F.Supp. at 1006. Moreover, this court previously found the deficiencies in Usinor's data arose from factors beyond Usinor's control. "Usinor's subsidiaries did not maintain the sourcing data. Therefore, any tracing would have been done manually. Due to the time limitations and the large number of invoices involved (180,000), this would have been unreasonable." *See Usinor*, 18 CIT at —, 872 F.Supp. at 1007 (citations omitted).

In assessing the circumstances present—*i.e.*, Usinor's near total compliance with Commerce's limited reporting arrangement as well as the presence of particular data flaws that were outside of Usinor's control—the court finds that Commerce's inclusion of the highest non-aberrant margin in the weighted average calculated margin is improper. Therefore, the court directs Commerce to recalculate the weighted average calculated margin without including the highest non-aberrant margins as part of its formulation.

**2. Usinor's Limited Challenge to Commerce's Choice of BIA**

■ In its comments to the *Remand Determination*, Usinor argues that the highest non-aberrant margins, as calculated in the original investigation, should not be applied to its unreported U.S. sales and to its sales involving systematic coding errors. (*See* Pls.' Comments on Comm. Dep't Redet. on Remand at 10–11.) Defendant and defendant-intervenors argue that Usinor never raised this issue on its initial appeal, and is therefore barred from raising it in the present case. (*See* Def.'s Resp. To Pls.' Comments on the Remand Redet. at 14; Resp. Of Def.-Int. To Pls.' Comments on Redet. on Remand at 11–14.)

Usinor concedes that it never expressly challenged before this court the use of the highest non-aberrant margin in connection with its unreported U.S. sales or sales involving systematic coding errors other than Grade E–24 steel. (*See* Pls.' Comments on Comm. Dep't Redet. on Remand at 5–6.) Usinor claims, however, that it raised a broad challenge to how the highest non-aberrant margin was used, arguing that Com-

merce's calculations were methodologically unsound as a general matter. (*See* Pls.' Comments on Comm. Dep't Redet. on Remand at 6.)

Contrary to Usinor's claims, a review of Plaintiffs initial briefs shows that Usinor did not raise such a general challenge to Commerce's selection of BIA. More importantly, a review of the agency record of the initial investigation reveals that Usinor never argued before Commerce, either generally or specifically, that an improper BIA was being applied to its unreported sales and miscoded sales other than Grade E–24 steel. When Usinor challenged Commerce's BIA methodology during the initial investigation, Usinor asserted, "even assuming that using the highest 'non-aberrational' margin as BIA is proper, *which it is not*, the Department has incorrectly calculated this margin." (Conf. Doc. 91, Letter from Usinor to Commerce of 7/1/93, at 3) (emphasis added). This phrase conveys the argument that if the highest non-aberrant margin were "incorrectly" held to be properly applicable as BIA, then that choice of BIA would have to be revisited. This challenge could not have applied to Usinor's unreported sales or miscoded sales other than Grade E–24, because Usinor concedes it is appropriate to apply some measure of the highest non-aberrant margins to these sales. (See Pls.' Comments on Comm. Dep't Redet. On Remand at 11) (asking court to instruct Commerce to apply "properly calculated 'highest non-aberrational' margins to certain unreported U.S. sales and certain sales involving systematic coding errors").

Furthermore, during Commerce's remand proceeding, Usinor challenged Commerce's BIA calculation with respect to Usinor's unreported sales and miscoded sales other than Grade E–24 steel only in the context of Usinor's *incorrect* claim that the court intended for Commerce to recalculate all the highest non-aberrant margins for sales where an adverse inference was permitted. (*See* Letter from Usinor to Commerce of 2/14/95, at 6–8.)

In *Usinor*, the court instructed Commerce to ensure that any recalculation of the highest non-aberrant margin be consistent with recent precedent. *See Usinor*, 18 CIT at ——, 872 F.Supp. at 1007 (directing Commerce to make recalculations consistent with *National Steel*). Any recalculation of the highest non-aberrant margin would be only applicable to Usinor's downstream sales. *See supra* background at 427–428. The court did not instruct Commerce to recalculate its highest non-aberrant margins with respect to Usinor's unreported U.S. sales and miscoded sales other than Grade E–24 steel, because the appropriateness of the highest non-aberrant margins in those contexts was never raised before Commerce during the initial investigation and, therefore, could not have been raised before the court for review.

■ The court "shall, where appropriate, require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d) (1988). "It is well established that '[a] reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the [agency] of an opportunity to consider the matter, make its ruling, and state the reasons for its action.' " *Budd Co. v. United States*, 15 CIT 446, 452, 773 F.Supp. 1549, 1554 (1991) (quoting *Unemployment Compensation Comm'n v. Aragon*, 329 U.S. 143, 155, 67 S.Ct. 245, 251, 91 L.Ed. 136 (1946)). The law does provide limited exceptions to the exhaustion requirement, however. These exceptions are: (1) where plaintiff raised a new argument that was purely legal and required no further agency involvement, in addition to plaintiff's demonstrating other factors indicating an exception is warranted, (2) where plaintiff lacked timely access to the confidential record, (3) where a judicial interpretation issued after the remand proceeding alters the agency result, and (4) where it would have been futile for plaintiff to have raised its challenge at the administrative level. *See Aramide Maatschappij V.o.F. v. United States*, 19 CIT ——, ——, 901 F.Supp. 353, 357 n. 3, 4 (1995); *see also Budd Co.*, 15 CIT at 452 n. 2, 773 F.Supp. at 1555 n. 2 (1991) (providing examples of cases where exhaustion was not required).

Usinor did not properly challenge before Commerce the selection and use of the highest non-aberrant margin as BIA to unreported U.S. sales and miscoded sales other than Grade E–24 steel. The exceptions to the exhaustion requirement do not allow such a challenge to be raised now. Therefore, the court holds that Usinor is precluded from raising this argument, and the court does not

need to address the issue of whether Commerce properly applied the highest non-aberrant margin as BIA for unreported U.S. sales and sales of miscoded steel other than Grade E–24 steel.

## CONCLUSION

Commerce's final determinations are sustained in part and remanded in part. On remand, Commerce shall reapply the weighted average calculated margin for unmatched downstream sales from Usinor's secondary steel centers in accordance with the specific instructions set forth in this opinion.

The remand results shall be filed with the Court within [45] days from the date of this opinion. Any party contesting the remand results shall file comments within [30] days of the remand results. Commerce may file its response to any comments within [15] days of the filing of the comments.