BÖHLER-UDDEHOLM CORP., PLAINTIFF *v.* UNITED STATES, DEFENDANT, AND
ALLEGHENY LUDLUM STEEL CORP., WASHINGTON STEEL CORP., AND G.O.
CARLSON, INC., DEFENDANT-INTERVENORS

Consolidated Court No. 95–08–01024

(Dated May 14, 1998)

*O'Donnell, Byrne & Williams, (R. Kevin Williams* and *Michael A. Johnson)* for plaintiff.
*Frank W. Hunger,* Assistant Attorney General, *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, United States Department of Justice *(Randi-Sue Rimerman), Carlos A. Garcia,* Attorney-Advisor, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.
*Collier, Shannon, Rill & Scott, PLLC, (Paul·C. Rosenthal, John B. Brew* and *Jeffrey S. Beckington)* for defendant-intervenors.

## OPINION

RESTANI, *Judge:* Before the court is the United States Department of Commerce's ("Commerce") *Results of Redetermination Pursuant to*

*Court Remand, Böhler-Uddeholm Corp. v. United States, Slip Op. 97–178 (Dec. 22, 1997)* [hereinafter *"Third Remand Results"].* Familiarity with the court's earlier decisions in this case is presumed.[1]

In *Böhler-Uddeholm III,* the court reviewed Commerce's *Second Remand Results* and again remanded to Commerce with the following instructions: (1) consider the relevant evidence based on a review of the entire record before Treasury in 1976, including the three documents excluded from review in the *Second Remand Results;* (2) comply with the remand instructions articulated in *Böhler-Uddeholm II;* and (3) address the arguments raised in Böhler-Uddeholm's Objections to the Agency's Second Remand Redetermination. In the *Third Remand Results,* which included in part the analysis from the *Second Remand Results,* Commerce concluded that Stavax and Ramax are within the scope of the original antidumping finding on stainless steel plate from Sweden.

Böhler-Uddeholm raises three arguments contesting this conclusion: (1) Commerce relied on a document, the American Iron and Steel Institute, *Steel Products Manual: Stainless and Heat Resisting Steels* (1974) ("AISI Manual"), that was not in the record before Treasury; (2) the definition of the scope gleaned by Commerce from the Tariff Commission Staff Report ("Staff Report") is overly broad and therefore Commerce improperly determined that AISI grade 414 and grade 420 steels, the grades Stavax and Ramax compete with, are within the scope of the finding; and (3) the *Carborundum*[2] analysis employed by Commerce incorrectly focused on resistance to corrosion and abrasion, a physical characteristic, and ignores or incorrectly analyzes the use information on the record. The court sustains Commerce's *Third Remand Results* in its entirety.

## I

Böhler-Uddeholm argues that Commerce's Second Remand Results contained references to the AISI Manual, a portion of which was attached to the petition, but which plaintiff argues was not before Treasury in its entirety. Thus, Böhler-Uddeholm argues that the *Third Remand Results,* which relied in part on the *Second Remand Results,* are invalid to the extent it relies on the AISI Manual.

Böhler-Uddeholm is barred from raising this issue before the court because it did not raise it during the administrative process. *See Budd Co. v. United States,* 773 F. Supp. 1549, 1554–55 (Ct. Int'l Trade 1991) (finding plaintiff's claim barred by failure to exhaust administrative remedies where plaintiff failed to raise argument during remand proceeding). Böhler-Uddeholm did not raise this issue in its objections to the

---

[1] *See Böhler-Uddeholm Corp. v. United States,* 946 F. Supp. 1003 (Ct. Int'l Trade 1996) [hereinafter *"Böhler-Uddeholm I"*], remanded, *Böhler-Uddeholm Corp. v. United States,* 978 F. Supp. 1176 (Ct. Int'l Trade 1997) [hereinafter *"Böhler-Uddeholm II"*], sustained in part, remanded in part, *Böhler-Uddeholm Corp. v. United States,* No. 95-08-01024, Slip Op. 97–178, 1997 WL 792936 (Ct. Int'l Trade 1997) [hereinafter *"Böhler-Uddeholm III"*], remanded.

[2] *See United States v. Carborundum Co.,* 536 F.2d 373, 377 (C.C.P.A. 1976).

*Second Remand Results*, nor did it raise it in its comments to the *Third Remand Results*. Moreover, while at one point in its comments to the draft remand determination Böhler-Uddeholm stated that it had doubts as to whether the AISI Manual was before Treasury, in a separate section of the same document, Böhler-Uddeholm relied on the AISI Manual to support its own position that Stavax and Ramax, like grades 414 and 420, are martensitic steels and thus not within the scope of the antidumping finding. *See Böhler-Uddeholm Comments on Preliminary Redetermination*, Def.'s App. at 78, 81.

## II

In *Böhler-Uddeholm III*, the court instructed Commerce to review three documents that were excluded from its analysis in the *Second Remand Results*. In its analysis of one of those documents, the Tariff Commission Staff Report, Commerce stated:

> There is no evidence in the Staff Report indicating that the Tariff Commission intended to limit the scope of the finding to the "major uses" enumerated in the petition, or that any merchandise meeting the chemical and physical dimensions of stainless steel plate was to have been excluded from the finding.

*Third Remand Results*, Def.'s App. at 38. Commerce further stated:

> The Staff Report sets forth five categories of stainless steel plate: (1) Grade 304, (2) Grade 304(L), (3) Grade 316, (4) Grade 316(L), and (5) "All Other" Grades. The uses or applications of these "other" grades, are not mentioned in the Staff Report. A reasonable inference, however, would be that the category "other grades" encompasses additional grades of steel meeting the chemical and physical dimension of stainless steel plate beyond the specified 300-grades.

*Id.*

Böhler-Uddeholm challenges two aspects of Commerce's analysis of the Staff Report. First, Böhler-Uddeholm argues that Commerce incorrectly determined the scope of the original finding because the Staff Report provides a narrow definition of the subject class or kind of merchandise, limited to the uses listed in the petition. Commerce's conclusion that the Staff Report did not limit the scope to certain specific uses of stainless steel plate, however, is supported by substantial evidence. Like the petition, the Staff Report listed the major uses of the subject class or kind of merchandise. *Staff Report*, at 4, Pl.'s App., Ex. 3, at 42. Similarly, the court has repeatedly held that the list of uses in the petition is not exhaustive. *See Böhler-Uddeholm II*, 978 F. Supp. at 1180 & n.7; *Böhler-Uddeholm I*, 946 F. Supp. at 1008. Further, Böhler-Uddeholm fails to point to any evidence that grades of stainless steel plate used in certain applications were excluded or that steel used as "tool steel" is different from the class or kind of merchandise. Thus, while Böhler-Uddeholm cites evidence that when viewed in isolation supports

an alternative conclusion, the court will not reweigh the evidence nor disturb a determination supported by substantial evidence.

Böhler-Uddeholm also argues that contrary to Commerce's conclusion, the Staff Report limited the scope of the class or kind of merchandise under investigation to four 300-grades of steel and excluded grades 414 and 420, which compete with Stavax and Ramax. The court finds that Commerce's determination is supported by substantial evidence. Commerce based its determination on the definition of the subject class in terms of physical characteristics, the consideration of imports and domestic production of "all other grades," and the fact that no grade of stainless steel otherwise falling within the definition of the subject class was explicitly excepted from the scope of the finding.

### III

Böhler-Uddeholm also argues that Commerce incorrectly performed the *Carborundum* analysis by: (1) comparing Stavax and Ramax to AISI stainless steel grades 414 and 420, rather than to the "totality of the class and kind in question;" (2) improperly focusing on the ability of stainless steel plate to resist corrosion and abrasion; and (3) placing excessive weight on the physical characteristics factor and insufficient weight on the use factor.

Contrary to Böhler-Uddeholm's assertions, Commerce did not err in its *Carborundum* analysis. First, throughout the *Third Remand Results*, Commerce compared Stavax and Ramax to the entire class or kind of merchandise subject to the antidumping finding. Commerce's infrequent references to grades 414 and 420 do not demonstrate that Commerce defined the scope of the class or kind of merchandise by limiting the comparison of Stavax and Ramax to only those two grades. Within its discussion, Commerce mentions steel grades 414 and 420 once to refute Böhler-Uddeholm's assertion that Commerce considered those two grades as defining the class or kind of merchandise. *Third Remand Results*, Def.'s App., at 46 n.3; *see also id.* at 50. In that situation, Commerce explained its analysis by noting that just as all other grades of steel within the scope were resistant to corrosion and abrasion, such as the 400 grades of steel, so were Stavax and Ramax. Commerce's only other mention of 400 grade steel is in its analysis to comments received. *Id.* at 53–54. In that situation, Commerce mentioned a 400 grade steel as an example to support its position that focusing on the sub-applications of stainless steel plate to determine the use of the class or kind of merchandise leads to impractical results; not to establish a comparison solely between grade 420 and Stavax and Ramax.

Second, the court is unpersuaded by Böhler-Uddeholm's argument that Commerce relied on resistance to corrosion and abrasion throughout its *Carborundum* analysis instead of limiting it to the physical characteristics factor. Commerce logically concluded that physical dimension and chemical composition, not resistance to corrosion and abrasion, determined whether Stavax and Ramax have similar physical

characteristics to the entire class or kind of merchandise. Moreover, Commerce did not refer to resistance to corrosion and abrasion in its analysis of at least two *Carborundum* factors, the channels of trade and environment of sale. When Commerce did refer to resistance to corrosion and abrasion, it accurately categorized it as a criteria of use. The fact that all merchandise within the scope of the finding have this characteristic and that this characteristic indirectly influences other *Carborundum* factors does not invalidate Commerce's analysis.

Third, the court disagrees with Böhler-Uddeholm's argument that Commerce erred in its *Carborundum* analysis by placing excessive weight on the physical characteristics factor, thereby ignoring the use factor. Here, the weight given to any particular factor did not effect the outcome because Commerce found that all seven *Carborundum* factors favored inclusion of Stavax and Ramax within the scope of the finding. Moreover, Böhler-Uddeholm's argument seeks to increase the weight given to the use factor when "use" is narrowly defined and limited to the list in the petition; a proposition repeatedly rejected by the court in this case.

As Commerce followed the court's remand instructions and reached a determination supported by substantial evidence, the *Third Remand Results* are sustained and plaintiff's motion for judgment on the agency record is denied.