74 F.3d 1260
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
The TIMKEN COMPANY, Plaintiff-Appellee,
v.
The UNITED STATES, Defendant-Appellee,
and
NTN Bearing Corporation of America, American NTN Bearing
Manufacturing Corporation, and NTN Corporation,
Defendants-Appellants,
and
Koyo Seiko Co., Ltd. and Koyo Corporation of U.S.A.,
Defendants-Appellees,
and
NSK Ltd. and NSK Corporation, Defendants.
 No. 95-1304.
 United States Court of Appeals, Federal Circuit.
 Jan. 22, 1996.
 
 Before PLAGER, LOURIE, and CLEVENGER, Circuit Judges.
 CLEVENGER, Circuit Judge.
 
 
 1
 NTN Corporation (NTN) seeks review of the decision of the United States Court of International Trade (the court), No. 92-03-00161, which instructed the International Trade Administration of the United States Department of Commerce (Commerce) to separate tapered roller bearing sets into their component parts before determining whether NTN was selling them in Japan at prices below the cost of production. We affirm.
 
 
 2
 * This litigation constitutes one small part of Commerce's inquiry into the alleged dumping of tapered roller bearings (TRBs) by Japanese companies. TRBs consist of a "cup" (an outer race) which surrounds a "cone assembly." These two parts may be sold separately, or as a set.
 
 
 3
 Commerce calculates the dumping margin by comparing the United States price (USP) with the foreign market value (FMV) of the corresponding item. Before making this comparison, however, 19 U.S.C. Sec. 1677b(b)(1) (1994) instructs Commerce to exclude from its FMV calculation those items that the exporter sells in non-U.S. markets at prices below its cost of production (the "COP test").
 
 
 4
 In the case of TRBs, the dumping margin calculation is complicated by the fact that TRBs are sold primarily as sets in Japan but as individual components in the United States. In order to properly compare apples to apples, Commerce split the sales price of a set in Japan into its component parts based on a ratio of each part's variable cost. Commerce then calculated the dumping margin by comparing the price of each part in Japan to its price in the United States.
 
 
 5
 When Commerce disclosed its final results, Timken submitted a letter objecting to clerical errors in the results. Timken noted that although Commerce split TRB sets into their component parts for calculating the dumping margin, Commerce had performed the COP test on TRB sets as a whole. Timken contended that the computer program should be corrected by performing the set splitting before applying the COP test. When Commerce decided not to alter its methodology, Timken instituted the present action in the court.
 
 
 6
 The court ordered Commerce to perform the COP test after splitting the TRB sets. This decision was based primarily on: (1) NTN's limited argument in opposition to Timken's; and (2) the Government's request that the matter be remanded to Commerce for correction.
 
 
 7
 In accordance with the court's remand order, Commerce altered its computer program to split the TRB sets into their component parts before performing the COP test. After reviewing the results of the remand determination and the comments thereto, the court affirmed the remand determination and dismissed the case. NTN appeals the court's remand decision to this court. We have jurisdiction under 28 U.S.C. Sec. 1295(a)(5) (1994).
 
 II
 
 8
 We review the court's review of Commerce's determination by applying anew the statutory judicial review standard. See Atlantic Sugar, Ltd. v. United States, 744 F.2d 1556, 1559 n. 10, 2 Fed.Cir. (T) 130, 133 n. 10 (Fed.Cir.1984). Under that standard, a reviewing court must sustain an agency's determination unless it is unsupported by substantial evidence on the record, or otherwise not in accordance with the law. 19 U.S.C. Sec. 1516a(b)(1) (1994).
 
 
 9
 At the outset, Timken and NTN each argue that the other cannot assert the issue of the set splitting sequence on appeal. NTN contends that Timken failed to raise the issue properly before the Commerce Department, and therefore failed to exhaust its administrative remedies. It is true, as a general matter, that parties seeking relief in the federal courts must first exhaust administrative remedies. See, e.g., McCarthy v. Madigan, 503 U.S. 140, 144-45 (1992). To do so, the parties must present the argument in a manner such that the agency has the opportunity to investigate the matter and make a corresponding determination. Cf. Budd Co., Wheel & Brake Div. v. United States, 773 F.Supp. 1549 (Ct.Int'l Trade 1991) (stating that by considering a matter not raised below, the reviewing court deprives the agency of an opportunity to consider the matter, make its ruling, and state the reasons for its action).
 
 
 10
 We conclude that Timken properly exhausted its administrative remedies during Commerce proceedings. When Commerce published its final results, Timken submitted a letter pursuant to 19 C.F.R. Sec. 353.28(a) which specifically objected to Commerce's COP test methodology and asserted that set splitting should be performed before the COP test. See 19 C.F.R. Sec. 353.28(a) (1995). By submitting this letter, Timken presented the issue to Commerce and provided Commerce with an opportunity to resolve it, thus exhausting its administrative remedies.
 
 
 11
 Timken responds with a similar argument, namely that we should not hear NTN's arguments because NTN failed to raise the issue below. As a general rule, an appellate court will not hear on appeal issues that were not raised in the proceedings below. Singleton v. Wulff, 428 U.S. 106, 120 (1976); Braun Inc. v. Dynamics Corp. of America, 975 F.2d 815, 821 (Fed.Cir.1992). This rule is needed to ensure that "parties may have the opportunity to offer all the evidence they believe relevant to the issues ... [and] in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence." Hormel v. Helvering, 312 U.S. 552, 556 (1941).
 
 
 12
 In the present case, we conclude that the issue was adequately raised below. At the agency level, NTN had no reason to raise the issue or to make arguments because NTN did not object to Commerce's original methodology. Before the court, Timken presented the issue in great detail and NTN responded as follows:
 
 
 13
 With respect to the second error alleged by Timken, NTN disagrees with Timken that the COP test should be performed after splitting. If, in fact, [Commerce's] present programming language has the effect that Timken describes, then [Commerce] should develop programming language to correct the problem (i.e., language which will identify all above cost sales) without performing the COP test after splitting.
 
 
 14
 Although NTN's arguments may have been feeble, we conclude that the two parties adequately presented the issue to the court to allow it to develop a record and address the issue.
 
 III
 
 15
 The antidumping law requires Commerce to exclude from its FMV calculation those foreign market sales made at prices below the cost of production. 19 U.S.C. Sec. 1677b(b)(1). This is the COP test. If no above cost sales remain after this adjustment has been made, the administering authority must compute a constructed FMV. Id. In the present case, the parties dispute only when the COP test should be performed.
 
 
 16
 To resolve this issue, we must turn first to the plain language of the statute. Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842 (1984). If the intent of Congress is clear from the language, both the court and the agency must give it effect. Id. at 842-43.
 
 
 17
 Timken contends that the statute requires Commerce to first split the TRB sets, then perform the COP test, and then calculate FMV from the remaining foreign market sales. We disagree. The plain language of the statute simply does not address the issue of whether the COP test should be performed before or after splitting. In fact, the language does not even mention splitting. Therefore, the statutory language does not end our inquiry.
 
 
 18
 When Congress has not directly spoken to the precise question at hand, we must sustain the agency's action if it is based on a permissible construction of the statute. Id. Such deference to the agency allows it to formulate policy and make rules "to fill any gap left, implicitly or explicitly, by Congress." Morton v. Ruiz, 415 U.S. 199, 231 (1974).
 
 
 19
 NTN contends that Commerce must perform the COP test prior to splitting the TRB sets because there is no basis for dividing the cost of production of a set into its component parts. We find NTN's argument unpersuasive.
 
 
 20
 It is settled that Commerce may split the sale price of a TRB set into its component parts for purposes of comparing FMV to USP. NTN Bearing Corp. of America v. United States, 858 F.Supp. 215, 219-20 (Ct.Int'l Trade 1994); NTN Bearing Corp. of America v. United States, 835 F.Supp. 646, 649 (Ct.Int'l Trade 1993); NTN Bearing Corp. of America v. United States, 747 F.Supp. 726, 740-41 (Ct.Int'l Trade 1990). In light of this, NTN has presented no argument for why Commerce may not similarly split the cost of production into its component parts--especially since Commerce's calculations are based upon variable cost information provided by NTN. Instead, it appears that NTN is trying to resurrect its original argument that it is inappropriate to split a TRB set into its component parts. That battle has already been waged and lost.
 
 
 21
 In making its dumping calculation, Commerce ultimately compares the price of TRB component parts in Japan to those in the United States. In light of this, it makes sense for Commerce to also perform the COP test on each component part rather than on the entire set. Otherwise, Commerce would exclude from its FMV calculation components which were actually sold above production cost but whose parent set as a whole was sold below production cost. In any case, we cannot say such an approach is impermissible.
 
 IV
 
 22
 In sum, we conclude that both parties properly exhausted their administrative remedies and that the issue was properly raised before the court. Although the statute does not explicitly address whether Commerce should perform the COP test before or after splitting TRB sets, we hold that Commerce's decision to perform the splitting first is certainly permissible. We therefore affirm the decision of the Court of International Trade.