Slip Op. 09-17

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **GERBER FOOD (YUNNAN) CO. LTD., GREEN FRESH (ZHANGZHOU) CO., LTD. and GUANGXI YULIN ORIENTAL FOOD (GUANGXI YULIN) CO., LTD.,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES,**<br><br>Defendant,<br><br>and<br><br>**COALITION FOR FAIR PRESERVED MUSHROOM TRADE,**<br><br>Defendant-Intervenor. | **Before: Timothy C. Stanceu, Judge**<br><br>**Court No. 05-00570** |

## <u>OPINION</u>

[Denying plaintiffs' motion for judgment upon the agency record in its entirety because of the failure of each plaintiff to exhaust its administrative remedies]

Dated: March 12, 2009

*Garvey Schubert Barer* (*Lizbeth R. Levinson* and *Ronald M. Wisla*) for plaintiffs.

*Michael F. Hertz*, Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, *Barbara S. Williams*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Richard P. Schroeder*); *Deborah King*, Office of Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.

*Kelley Drye & Warren, LLP* (*Michael J. Coursey* and *Adam H. Gordon*) for defendant-intervenor.

Stanceu, Judge: Plaintiffs Green Fresh (Zhangzhou) Co., Ltd. ("Green Fresh"), Gerber

Food (Yunnan) Co. Ltd. ("Gerber"), and Guangxi Yulin Oriental Food (Guangxi Yulin) Co., Ltd.

("Guangxi Yulin") contest the final results ("Final Results") that the International Trade

Administration, United States Department of Commerce ("Commerce" or the "Department")

issued in the fifth administrative review of an antidumping duty order applying to imports of

certain preserved mushrooms from the People's Republic of China ("PRC" or "China").[1]

*Certain Preserved Mushrooms From the People's Republic of China: Final Results and Final*

*Recision, in Part, of Antidumping Duty Admin. Review*, 70 Fed. Reg. 54,361 (Sept. 14, 2005)

("*Final Results*"). The fifth administrative review pertained to entries of subject mushrooms

made during the period beginning February 1, 2003 and ending January 31, 2004 ("period of

review"). *Final Results*, 70 Fed. Reg. at 54,361. Before the court is plaintiffs' motion, made

under USCIT Rule 56.2, for judgment upon the agency record.

Plaintiffs contend that Commerce's decision to apply a 198.63% rate as "partial adverse

facts available" to Green Fresh and as "total adverse facts available" to Gerber and Guangxi

Yulin is not supported by substantial record evidence and is otherwise not in accordance with

law. Plaintiffs do not contest the Department's decision to apply "adverse facts available" to

their sales transactions. Rather, they argue that the statute requires that the assigned rate relate to

the respondent to which it is assigned and that Commerce has not established any rational nexus

between the China-wide rate applied to their entries, *i.e.*, 198.63%, and the record evidence

---

[1] On October 17, 2005, Commerce published amended final results for the fifth administrative review ("Amended Final Results"). *Notice of Am. Final Results of Antidumping Duty Admin. Review: Certain Preserved Mushrooms from the People's Republic of China*, 70 Fed. Reg. 60,280 (Oct. 17, 2005). The Amended Final Results corrected ministerial errors brought to Commerce's attention by the petitioner. *Id.* at 60,281. These corrections had no effect on the antidumping duty assessment rates assigned to Green Fresh, Gerber, and Guangxi Yulin and did not amend the Final Results in any way with respect to these three parties. *See id.* The Amended Final Results do not supplant the Final Results, and as to the three plaintiffs in this case, the Final Results remain in effect.

pertaining to each of the three plaintiffs. Plaintiffs further argue that the 198.63% rate is impermissibly punitive. Defendant contends that none of the plaintiffs has exhausted its administrative remedies and that the court therefore must dismiss plaintiffs' claims. The Coalition for Fair Preserved Mushroom Trade, defendant-intervenor in this case and the petitioner in the original antidumping duty investigation, made no arguments in response to plaintiffs' motion.

The court concludes that no plaintiff took action sufficient to exhaust its administrative remedies. The case brief Green Fresh filed with Commerce did not make the argument that plaintiffs' Rule 56.2 brief makes before the court. Gerber and Guangxi Yulin did not participate fully in the administrative review and filed no case briefs with Commerce. The court therefore denies plaintiffs' Rule 56.2 motion in its entirety for failure to exhaust administrative remedies.

## I. BACKGROUND

Commerce issued an antidumping duty order on certain preserved mushrooms (the "subject merchandise") from China in 1999. *See Notice of Amendment of Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Preserved Mushrooms From the People's Republic of China*, 64 Fed. Reg. 8308, 8310 (Feb. 19, 1999). In February 2004, the Department announced the opportunity to request the administrative review at issue in this case. *Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity To Request Admin. Review*, 69 Fed. Reg. 5125, 5126 (Feb. 3, 2004). The petitioner requested administrative review of twenty-eight producers or exporters of the subject merchandise, including all three plaintiffs. *Letter from Collier Shannon Scott to Sec'y of Commerce* 2-3 (Feb. 27, 2004) (Admin. R. Doc. No. 4). Several Chinese producers or exporters

of the subject merchandise, including Gerber, also filed requests for administrative review. *Letter from Garvey Schubert Barer to Sec'y of Commerce* (Feb. 27, 2004) (Admin. R. Doc. No. 5) (requesting administrative review on behalf of Gerber and three other exporters of subject merchandise); *Letter from Lee & Xiao to Sec'y of Commerce* (Feb. 25, 2004) (Admin. R. Doc. No. 3); *Letter from Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP to Sec'y of Commerce* (Feb. 27, 2004) (Admin. R. Doc. No. 6); *Letter from Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP to Sec'y of Commerce* (Feb. 27, 2004) (Admin. R. Doc. No. 7). On March 26, 2004, Commerce initiated the administrative review in response to these requests. *See Initiation of Antidumping and Countervailing Admin. Duty Reviews and Requests for Revocation in Part*, 69 Fed. Reg. 15,788, 15,801 (Mar. 26, 2004).

### A. Commerce's Administrative Review of Green Fresh

In calculating an antidumping duty assessment rate for Green Fresh, Commerce attempted to determine a constructed export price for those sales of subject merchandise that Green Fresh made to affiliated purchasers in the United States. *See Certain Preserved Mushrooms From the People's Republic of China: Prelim. Results and Partial Rescission of Fifth Antidumping Duty Admin. Review*, 70 Fed. Reg. 10,965, 10,967-68 (Mar. 7, 2005) ("*Prelim. Results*"). Commerce sent Green Fresh a series of questionnaires requesting that Green Fresh provide financial and sales data for its U.S. affiliates' sales transactions of subject merchandise made during the period of review. *See Letter from Garvey Schubert Barer to Sec'y of Commerce*, Attach. 1 at 1, 9-10 (May 21, 2004) (Admin. R. Doc. No. 45); *Letter from Garvey Schubert Barer to Sec'y of Commerce*, Attach. 1 at 1-2, 13-15 (Sept. 3, 2004) (Admin. R. Doc. No. 102); *Letter from Garvey Schubert Barer to Sec'y of Commerce*, Attach. 1 at 5-7 (Nov. 23, 2004) (Admin R. Doc.

No. 129). In response to Commerce's second such questionnaire, Green Fresh provided sales price data for its two U.S. affiliates, Green Mega Corporation ("Green Mega") and Family Mutual Corporation ("Family Mutual"). *Prelim. Results*, 70 Fed. Reg. at 10,967. Green Fresh's responses to these questionnaires did not, however, provide all of the financial data pertaining to the two affiliates that Commerce had requested. Missing were fiscal year 2003 financial statements with auditor's notes and U.S. tax returns for 2003. *Letter from Garvey Schubert Barer to Sec'y of Commerce*, Attach. 1 at 5-7 (Nov. 23, 2004). Green Fresh stated in its questionnaire responses that Green Mega's 2003 tax return had not yet been filed and that it would provide that affiliate's tax return and financial statements by December 16, 2004, one day after the tax returns were due. *Id.* Green Fresh provided Commerce with Family Mutual's fiscal year 2003 financial statement in response to the agency's second questionnaire and agreed that it would provide the corresponding auditor's notes and tax return by December 16, 2004. *Id.* Green Fresh did not, however, submit the notes and tax return by December 16, 2004, nor did the company request an extension of that due date. *Letter from U.S. Dep't of Commerce to Garvey Schubert Barer* 1 (Mar. 15, 2005) (Admin. R. Doc. No. 207) ("*Commerce Letter*").

In the preliminary results of the administrative review ("Preliminary Results"), published on March 7, 2005, Commerce calculated an antidumping duty assessment rate of 153.93% for Green Fresh. *See Prelim. Results*, 70 Fed. Reg. at 10,976. To arrive at the 153.93% rate, Commerce relied upon 19 U.S.C. § 1677e to apply a procedure that it termed "partial adverse facts available." *Id.* at 10,967-68 (citing 19 U.S.C. § 1677(e) (2000)). Commerce concluded that the use of "facts otherwise available" pursuant to § 1677e(a)(2)(D) was warranted with respect to the sales of subject merchandise Green Fresh had made through its affiliates in the United States,

*i.e.*, its constructed export price ("CEP") sales. *Id.* at 10,968. The agency based this conclusion

on a finding that Green Fresh had failed to provide the financial data necessary to substantiate the

sales price data that Green Fresh had reported for its CEP sales. *Id.* at 10,967-68. According to

Commerce, without the financial data, the agency could not rely on the sales data Green Fresh

had reported with respect to Green Mega and Family Mutual. *Id.* Commerce further concluded

that, pursuant to 19 U.S.C. § 1677e(b), the agency was entitled to use an "adverse inference[]" in

"selecting from among the facts otherwise available" because Green Fresh had failed to

cooperate to the best of its ability with the Department's requests for information. *Id.* at 10,968.

In Commerce's view, Green Fresh's failure to report the financial data when it stated that it had

the ability to do so indicated that the company did not cooperate to the best of its ability. *Id.*

Pursuant to its "partial adverse facts available" procedure, Commerce applied the PRC-wide rate

of 198.63% to all of Green Fresh's constructed export price sales. *Id.* Commerce did not apply

§ 1677e(a) and (b) to Green Fresh's export price sales and used data Green Fresh had reported

for those sales in calculating Green Fresh's antidumping duty assessment rate. *See id.* at 10,968,

10,972.

On March 7, 2005, the same day that Commerce published the Preliminary Results,

Green Fresh attempted to submit certain tax documents for Green Mega and Family Mutual.[2]

*See Commerce Letter* 1; *see also Letter from Collier Shannon Scott to Sec'y of Commerce* 1-2

---

[2] Although the Final Results state that Green Fresh made this attempted submission on March 2, 2005, defendant's brief and record documents indicate that the attempted submission actually occurred on March 7, 2005. *See Certain Preserved Mushrooms From the People's Republic of China: Final Results and Final Recission, in Part, of Antidumping Duty Admin. Review*, 70 Fed. Reg. 54,361 (Sept. 14, 2005); Def.'s Opp'n to Pl.'s Mot. for J. upon the Agency R. 5.

(Mar. 11, 2005) (Admin. R. Doc. No. 205). Commerce refused to consider this submission, stating that it was untimely and unsolicited pursuant to 19 C.F.R. § 351.302(b) (2004). *Commerce Letter* 1. Commerce returned all copies of the submission to Green Fresh and, citing 19 C.F.R. § 351.104(a)(2)(iii) (2004), excluded the submission from the record. *Id.*

In the Final Results, Commerce calculated an antidumping duty assessment rate of 167.72% for Green Fresh. *Final Results*, 70 Fed. Reg. at 54,364. The Final Results incorporate a document identified as an "Issues and Decision Memorandum," in which Commerce once again invoked the "facts otherwise available" and "adverse inferences" provisions of 19 U.S.C. § 1677e with respect to Green Fresh's constructed export price sales of subject merchandise and applied the 198.63% PRC-wide rate to these transactions. *Final Results*, 70 Fed. Reg. at 54,362, 54,365; *Issues and Decision Mem. for the Final Results in the 2002/2003 Admin. Review of Certain Preserved Mushrooms from the People's Republic of China* 32-33 (Sept. 6, 2005) (citing 19 U.S.C. § 1677e(a)(2)(D) & (b)) (Admin. R. Doc. No. 276) ("*Decision Mem.*"). Green Fresh's overall margin increased from the overall margin that had been stated in the Preliminary Results because Commerce made certain changes, not challenged before the court, affecting the margin for Green Fresh's export price sales. *See Final Results*, 70 Fed. Reg. at 54,362; *Decision Mem.* 35-36.

### B. Commerce's Administrative Review of Gerber

In the Preliminary Results, Commerce found that Gerber had demonstrated independence from Chinese government control and calculated, based on Gerber's reported data, a preliminary individual antidumping duty assessment rate of 0% for the respondent. *Prelim. Results*, 70 Fed. Reg. at 10,971, 10,976. Following the publication of the Preliminary Results, from March 29,

2005 through April 1, 2005, a Commerce verification team visited Gerber's offices in China to verify Gerber's responses to the Department's original and supplemental antidumping duty questionnaires. *Mem. from James C. Doyle and Amber Musser, U.S. Dep't of Commerce, to the File* 1 (June 13, 2005) (Admin. R. Doc. No. 246) ("*Gerber Verification Mem.*"). During verification, Commerce discovered evidence suggesting that Gerber had a relationship with at least one other producer or exporter of the subject merchandise. *Id.* at 2. Specifically, Commerce discovered at the verification evidence that Gerber purchased, and was in possession of, mushroom can labels listing Guangxi Yulin as the manufacturer. *Id.* Gerber had denied having any relationships with other producers or exporters of subject merchandise in its questionnaire responses. *See Letter from Garvey Schubert Barer to Sec'y of Commerce*, Attach. 1 at A-2 (May 24, 2004) (Admin. R. Doc. No. 47) (stating that "Gerber does not have any relationship with other producers or exporters of the subject merchandise"). On April 1, 2005, Gerber withdrew from verification, promptly reclaimed all of its exhibits, and indicated acceptance that its withdrawal would result in the application of what Commerce termed "total adverse facts available." *Gerber Verification Mem.* 1.

In the Final Results, Commerce applied the "facts otherwise available" and "adverse inferences" provisions of 19 U.S.C. § 1677e to assign the PRC-wide rate of 198.63% to all of Gerber's entries. *Final Results*, 70 Fed. Reg. at 54,363. According to Commerce, the application of "facts otherwise available" pursuant to § 1677e(a) was required because Gerber, by withdrawing from verification, had "made it impossible for the Department to verify all of the information on the record." *Id.* Commerce stated that it was unable to verify, in particular, information relating to the issue of whether Gerber was independent from government control.

*Id.* at 54,362-63.  Commerce further concluded that "by withdrawing from verification, Gerber has failed to cooperate to the best of its ability."  *Id.* at 54,363.  Commerce, pursuant to § 1677e(b), used an inference adverse to Gerber in selecting among the facts otherwise available with respect to Gerber's separate rate information.  *Id.*  As an adverse inference, Commerce denied Gerber's request that it be deemed independent from government control and subjected all of Gerber's entries to the 198.63% PRC-wide rate.  *Id.*

### C.  Commerce's Administrative Review of Guangxi Yulin

Commerce, in the Preliminary Results, found Guangxi Yulin to be independent from government control and calculated a preliminary antidumping duty assessment rate of 8.92% for the company.  *Prelim. Results*, 70 Fed. Reg. at 10,971-72, 10,976.  Following Gerber's withdrawal from verification, however, Commerce sent Guangxi Yulin a supplemental questionnaire that requested further detail and explanation as to Guangxi Yulin's relationship with Gerber.  *Letter from U.S. Dep't of Commerce to Trade Pacific PLLC* 2-3 (June 3, 2005) (Admin. R. Doc. No. 240).  In response to this questionnaire, Guangxi Yulin informed Commerce that it "does not intend to file a response to the Department's supplemental questionnaire dated June 3, 2005."  *Letter from Trade Pacific PLLC to the Sec'y of Commerce* (June 24, 2005) (Admin. R. Doc. No. 251).  On June 30, 2005, Guangxi Yulin further informed Commerce that "Guangxi Yulin does not intend to participate any further in [this administrative] review."  *Letter from Trade Pacific PLLC to the Sec'y of Commerce* (June 30, 2005) (Admin R. Doc. No. 254) ("*Guangxi Yulin Intent to Withdraw Letter*").  The letter also stated that "Guangxi Yulin understands that petitioners in this case have not withdrawn their request for review, and

that because of Guangxi Yulin's lack of participation, the Department may find the company to have failed to cooperate to the best of its ability pursuant to [19 U.S.C. § 1677e(b)]." *Id.*

In the Final Results, Commerce invoked the "facts otherwise available" and "adverse inferences" provisions of 19 U.S.C. § 1677e in assigning the PRC-wide rate of 198.63% to all entries of Guangxi Yulin's subject merchandise. *Final Results*, 70 Fed. Reg. at 54,363-64. Although Commerce upheld its earlier finding that Guangxi Yulin was independent of government control and entitled to an individual antidumping duty assessment rate, Commerce also found that Guangxi Yulin's refusal to respond to Commerce's supplemental questionnaire left the record incomplete and warranted the application of "facts otherwise available" pursuant to § 1677e(a)(1) and § 1677e(a)(2)(A) and (B) with respect to all of Guangxi Yulin's entries. *Id.* at 54,362-63. Commerce further determined that the application of "adverse inferences" pursuant to § 1677e(b) was warranted based on its finding that Guangxi Yulin, in refusing to respond to the final supplemental questionnaire, failed to cooperate to the best of its ability. *Id.* at 54,363-64. Commerce determined that assigning the 198.63% rate was appropriate as an adverse inference. *Id.* at 54,364.

## II. Discussion

The court exercises jurisdiction over this case pursuant to 28 U.S.C. § 1581(c) (2000). Under the applicable standard of review, the court must hold unlawful any determination, finding or conclusion found to be unsupported by substantial evidence on the record or otherwise not in accordance with law. *See* 19 U.S.C. § 1516a(b)(1)(B)(i) (2000). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

A party who failed to exhaust the administrative means of presenting a claim to an agency usually is not permitted to raise that claim for the first time before a court reviewing the agency's action. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("'[A]s a general rule . . . courts should not topple over administrative decisions unless the administrative body not only has erred, *but has erred against objection made at the time appropriate under its practice*.'" (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952))).  Requiring exhaustion of administrative remedies serves "'the twin purposes . . . of protecting administrative agency authority and promoting judicial efficiency.'"  *Richey v. United States*, 322 F.3d 1317, 1326 (Fed. Cir. 2003) (quoting *Sandvik Steel Co. v. United States*, 164 F.3d 596, 600 (Fed. Cir. 1998)).

The court has discretion under 28 U.S.C. § 2637(d) to determine the circumstances under which it will require exhaustion of administrative remedies.  *See* 28 U.S.C. § 2637(d) (2000) (providing that the court "shall, *where appropriate*, require the exhaustion of administrative remedies" (emphasis added)); *see Corus Staal BV v. United States*, 502 F.3d 1370, 1381 (Fed. Cir. 2007) (stating that "applying exhaustion principles in trade cases is subject to the discretion of the judge of the Court of International Trade").  Waiver of the exhaustion requirement has been recognized as appropriate when: (1) plaintiff's argument involves a pure question of law; (2) there is a lack of timely access to the confidential record; (3) a judicial decision rendered subsequent to the administrative determination materially affected the issue; or (4) raising the issue at the administrative level would have been futile.  *See generally, Budd Co., Wheel & Brake Div. v. United States*, 15 CIT 446, 452 n.2, 773 F. Supp. 1549, 1555 n.2 (1991) (reviewing cases where the Court of International Trade has not required exhaustion of administrative remedies).  Upon review of the administrative record and the submissions of the parties, the court concludes

that none of the plaintiffs has exhausted its administrative remedies and that the established

exceptions to the exhaustion requirement do not apply in this case.

### A. Green Fresh Has Not Exhausted Its Administrative Remedies

Defendant argues in its brief responding to Green Fresh's Rule 56.2 motion that the court

should not allow Green Fresh to contest Commerce's decision to apply the 198.63% rate to

Green Fresh's CEP sales. Def.'s Opp'n to Pl.'s Mot. for J. upon the Agency R. 14-16 ("Def.'s

Opp'n"). Defendant contends that the argument Green Fresh made at the agency level did not

challenge the 198.63% rate and that Green Fresh no longer pursues the argument that it made

before Commerce. *Id.* at 14. Defendant submits that Green Fresh has failed to exhaust its

administrative remedies, citing *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed.

Cir. 1990), for the principle that a party cannot raise upon appeal an argument that it did not

present before Commerce, even if the party characterizes the argument as merely a different

angle of an issue raised before Commerce. Def.'s Opp'n 14.

Although the court disagrees with defendant's contention that Green Fresh did not

challenge the 198.63% rate during the administrative review, the court concludes that defendant

is correct in contending that the arguments Green Fresh makes before the court were never

presented to Commerce. Because Green Fresh's argument before the court was not made below,

the court's refusal to hear Green Fresh's claim serves the purposes of the exhaustion requirement.

Defendant's allegation that Green Fresh did not challenge the 198.63% rate during the

administrative review mischaracterizes the argument that Green Fresh made at the agency level.

In a case brief submitted to Commerce in response to the Preliminary Results, Green Fresh

objected to Commerce's decision to apply the "facts otherwise available" and "adverse

inferences" provisions of 19 U.S.C. § 1677e(a) and (b), respectively, to Green Fresh's CEP sales. *Letter from Garvey Schubert Barer to the Sec'y of Commerce*, Attach. 1 at 1 (July 6, 2005) (Admin. R. Doc. No. 257). Specifically, Green Fresh argued that Commerce's application of "partial adverse facts available" was unwarranted because Green Fresh had been cooperative during the administrative review, because its failure to file timely certain financial documents was due to an oversight, and because Commerce had successfully verified its export price sales data. *Id.* at 1-3. The case brief urged that Commerce calculate an antidumping duty rate for Green Fresh based upon the export price and constructed export price sales data Green Fresh had provided to the agency. *Id.* at 3 (stating that "the verification proved that Green Fresh's response is complete and accurate and the Department should thus also apply that conclusion to Green Fresh's CEP sales"). Because Commerce relied on the provisions of § 1677e(a) and (b) to assign the 198.63% PRC-wide rate to Green Fresh's CEP sales, Green Fresh's objection to the application of these provisions constituted a challenge to the application of the 198.63% rate. *See Preliminary Results*, 70 Fed. Reg. at 10,967-68. Green Fresh's argument that Commerce should calculate a different rate for its CEP sales using the sales data that Green Fresh had placed on the record also constituted a challenge to the 198.63% rate. In making that argument, Green Fresh clearly expressed a desire to have Commerce apply a rate other than the PRC-wide rate of 198.63% to those sales.

Defendant is correct, however, in contending that the arguments Green Fresh makes to the court in opposition to assignment of the 198.63% rate were not made below. Green Fresh's case brief did not argue, as plaintiffs' Rule 56.2 brief does here, that the 198.63% rate is factually unsupported. Nor did the case brief argue that the 198.63% rate is impermissibly punitive.

Instead, Green Fresh's argument to Commerce in response to the Preliminary Results was that

Commerce should not invoke the facts otherwise available and adverse inference provisions at

all.  Because Commerce, in the Preliminary Results, preliminarily assigned the 198.63% rate to

Green Fresh as an adverse inference, Green Fresh could have made, but did not make, to

Commerce the arguments it advances here, either in the alternative to, or instead of, its argument

that no application of "partial adverse facts available" was appropriate.  Under the Department's

regulations, Green Fresh had an obligation to do so if it thought the arguments were relevant.

*See* 19 C.F.R. § 351.309(c)(2) (2005) (requiring a respondent to "present all arguments that

continue in the submitter's view to be relevant to the Secretary's final determination or final

results" in its case brief).

The court is not required to consider Green Fresh's claim simply because Green Fresh's

case brief and Rule 56.2 brief both addressed the general issue of Commerce's application of the

198.63% rate to the CEP sales.  *See Rhone Poulenc*, 899 F.2d at 1191 (disagreeing with

plaintiff's contention that appellate courts can consider new arguments so long as the general

issue was raised at the agency level).  Rather, because Green Fresh's argument challenging the

198.63% rate as impermissibly punitive and unsupported by record facts was first raised upon

judicial review, hearing Green Fresh's claim would run counter to the primary purposes of the

exhaustion doctrine.  The exhaustion doctrine exists to "promote[] judicial efficiency and

conserve judicial resources, by affording the agency the opportunity to rectify its own mistakes

(and thus to moot controversy and obviate the need for judicial intervention)."  *Ta Chen Stainless*

*Steel Pipe, Ltd. v. United States*, 28 CIT 627, 644, 342 F. Supp. 2d 1191, 1206 (2004) (citing

*Parsi v. Davidson*, 405 U.S. 34, 37 (1972) and *Richey*, 322 F.3d at 1326).  Moreover, "[a]

reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the [agency] of an opportunity to consider the matter, make its ruling, and state the reasons for its action." *See Unemployment Comp. Comm'n of Alaska v. Aragon*, 329 U.S. 143, 155 (1946). In failing to argue at the administrative level that the 198.63% rate was impermissibly punitive and contrary to record facts, Green Fresh deprived Commerce of the opportunity to reconsider, and possibly depart from, the determination it made in the Preliminary Results that the 198.63% rate was the appropriate rate to apply as an adverse inference. As a result, the court is placed in the position of hearing arguments, and expending judicial resources, in search of a resolution to a dispute that the agency might have resolved had it been given the chance to do so.

None of the exceptions to the exhaustion doctrine is applicable with respect to Green Fresh. Green Fresh's claim does not raise a pure question of law. To qualify for this exception, plaintiff must raise a new argument that is of a purely legal nature, the inquiry must not require further agency involvement, additional fact finding, or opening up of the record, and the inquiry must neither create undue delay nor cause expenditure of scarce party time and resources. *See Thai I-Mei Frozen Foods Co., Ltd. v. United States*, 31 CIT __, __, 477 F. Supp. 2d 1332, 1354-55 (2007) (citing *Corus Staal BV v. United States*, 30 CIT 1040, 1050 n.11 (2006), *aff'd*, 502 F.3d 1370). As plaintiff maintains that Commerce cannot establish a relationship between the 198.63% rate and *record information* pertaining to Green Fresh, the arguments are not of a purely legal nature and involve issues of both law and fact.

The second exception to exhaustion, lack of access to the confidential record, does not arise in the context of this case. Nor has there been an intervening judicial decision that excuses

Green Fresh's failure to raise its arguments at the administrative level. To qualify for the intervening judicial decision exception, there must have been "judicial interpretations of existing law after decision below and pending appeal–interpretations which if applied might have materially altered the result." *Hormel v. Helvering*, 312 U.S. 552, 558-59 (1941) (footnote omitted). Plaintiffs cite *Gerber Food (Yunnan) Co., Ltd. v. United States*, 29 CIT 753, 387 F. Supp. 2d 1270 (2005) ("*Gerber I*") and *Gerber Food (Yunnan) Co., Ltd. v. United States*, 31 CIT __, 491 F. Supp. 2d 1326 (2007) ("*Gerber II*") in their brief before the court. Br. in Supp. of Pls.' Mot. for J. upon the Agency R. 7 ("Pls.' Br."). Although these decisions were issued after Commerce's deadline for the filing of case briefs in this action, neither decision would have affected the result materially.[3] The Court of International Trade's decisions in *Gerber I* and *Gerber II* are not binding. *See Algoma Steel Corp. v. United States*, 865 F.2d 240, 243 (Fed. Cir. 1989) (finding no rule to suggest that the Court of International Trade's opinions are binding in other Court of International Trade cases). Moreover, contrary to Green Fresh's assertion, the Court of International Trade did not face "virtually the same set of facts" in these cases. *See* Pls.' Br. 7. The plaintiffs in *Gerber I* and *Gerber II* did not, as Green Fresh has done here, fail to timely submit financial information relating to their CEP sales. In contrast to the facts of this case, Commerce found few discrepancies with the financial and sales information the plaintiffs in *Gerber I* and *Gerber II* submitted, and Commerce resolved any inaccuracies it found during

_____

[3] Case briefs in preparation for the Final Results were due on July 6, 2005 and rebuttal briefs were due on July 13, 2005. *Mem. from Amber Musser, U.S. Dep't of Commerce, to the File* (June 29, 2005) (Admin. R. Doc. No. 253). *Gerber Food (Yunnan) Co., Ltd. v. United States*, 29 CIT 753, 387 F. Supp. 2d 1270 (2005), was issued on July 18, 2005. *Gerber Food (Yunnan) Co., Ltd. v. United States*, 31 CIT __, 491 F. Supp. 2d 1326 (2007), was issued on May 24, 2007.

verification. *Gerber II*, 31 CIT at __, 491 F. Supp. 2d at 1335 (observing that, excepting record evidence regarding an export agency agreement, Commerce resolved any inaccuracies and discrepancies with respect to the information plaintiffs submitted (citing *Gerber I*, 29 CIT at 766, 387 F. Supp. 2d at 1882)).

Finally, the court has no basis to conclude that Commerce would have rejected Green Fresh's argument had it been made below. Accordingly, the court cannot conclude that Green Fresh's raising of the issue before the agency would have been futile. Because Green Fresh failed to exhaust its administrative remedies, and because no established exception to exhaustion applies, the court denies plaintiffs' motion for judgment upon the agency with respect to Green Fresh.

### B.  Gerber and Guangxi Yulin Have Not Exhausted Their Administrative Remedies

The court concludes that Gerber and Guangxi Yulin have not exhausted their administrative remedies with respect to the claims they now make before the court. Like Green Fresh, these plaintiffs challenge the application, in the Final Results, of the 198.63% rate to their entries, arguing that this rate is impermissibly punitive and factually unsupported. Pls.' Br. 7-8. Unlike Green Fresh, Gerber and Guangxi Yulin did not fully participate in the administrative review and declined even to file case briefs. *See Final Results*, 70 Fed. Reg. at 54,361.

Gerber withdrew from verification and indicated acceptance that the withdrawal would result in the application of "total adverse facts available" to its entries. *Gerber Verification Mem.* 1. Gerber, thereafter, did not submit any arguments or comments to Commerce as to whether the application of the "facts otherwise available" and "adverse inferences" provisions of 19 U.S.C. § 1677e was warranted or as to how Commerce should calculate Gerber's antidumping

duty assessment rate. Guanxi Yulin refused to answer Commerce's supplemental questionnaire sent on June 3, 2005, explicitly expressed its intent not to participate further in the administrative review, and acknowledged that the application of "adverse inferences" pursuant to 19 U.S.C. § 1677e(b) was a possibility. *Guangxi Yulin Intent to Withdraw Letter* 1. Like Gerber, Guangxi Yulin did not submit any arguments or comments to Commerce as to whether the application of the "facts otherwise available" and "adverse inferences" provisions of 19 U.S.C. § 1677e was warranted or as to how Commerce should calculate the antidumping duty assessment rate to be applied to Guangxi Yulin's entries.

Because Gerber and Guangxi Yulin failed to make any argument relating to how Commerce should calculate their antidumping duty assessment rates in the Final Results, Commerce was not put on notice of their objections. Requiring exhaustion with respect to Gerber and Guangxi Yulin thus serves the twin purposes of the exhaustion requirement. *See Richey*, 322 F.3d at 1326 (stating that "the twin purposes" are "protecting administrative agency authority and promoting judicial efficiency"). In an antidumping case, where "'Congress has prescribed a clear, step-by-step process for a claimant to follow, . . . the failure to do so precludes [the claimant] from obtaining review of that issue in the Court of International Trade.'" *Ta Chen Stainless Steel Pipe, Ltd.*, 28 CIT at 645, 342 F. Supp. 2d at 1206 (quoting *JCM, Ltd. v. United States*, 210 F.3d 1357, 1359 (Fed. Cir. 2000)).

None of the exceptions to the exhaustion obligation applies with respect to Gerber and Guangxi Yulin. Gerber's and Guangxi Yulin's claims do not raise a pure legal question. Just as does Green Fresh's claim, Gerber's and Guangxi Yulin's claims involve issues of both law and fact. The second exception to exhaustion, lack of access to the confidential record, does not arise

in the context of this case. Nor has there been an intervening judicial decision that excuses Gerber's and Guangxi Yulin's failure to raise their issues at the administrative level. Plaintiffs in *Gerber I* and *Gerber II* did not face the same set of facts as Gerber and Guangxi Yulin do here, and therefore those decisions would not have materially affected the result in this case. The plaintiffs in *Gerber I* and *Gerber II* did not, as Gerber has done here, withdraw from verification. Nor did they, as Guangxi Yulin has done here, explicitly refuse to respond to Commerce's questionnaires and express an intent to forego further participation in the administrative review. Finally, the court cannot conclude on this record that the outcome at the agency level would have been the same had Gerber and Guangxi Yulin completed their participation in the administrative review, thus placing themselves in a position to pursue before the agency the arguments they raise here, and had they actually raised such arguments. Because Gerber and Guangxi Yulin failed to exhaust their administrative remedies, and because no established exception to exhaustion applies, the court denies plaintiffs' motion for judgment upon the agency record as it relates to these two plaintiffs.

### III. CONCLUSION

The court concludes that Green Fresh, Gerber, and Guangxi Yulin have failed to exhaust their administrative remedies with respect to the claims they now bring before the court and that no established exceptions to the exhaustion requirement apply in these circumstances. Therefore, the court will deny plaintiffs' motion for judgment upon the agency record and enter judgment affirming the Final Results.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Judge

Dated: March 12, 2009
New York, New York