Slip Op. 15 - 144

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
| --- | --- | --- |
| TOSCELIK PROFIL VE SAC ENDUSTRISI A.S., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Before: R. Kenton Musgrave, Senior Judge |
| | : | |
| UNITED STATES, | : | Court No. 14-00211 |
| | : | |
| Defendant. | : | |
| | : | |

**OPINION AND ORDER**

[Remanding administrative review of respondent's countervailing duty rate.]

Dated: December 21, 2015

*David L. Simon*, Law Offices of David L. Simon, of Washington DC, for the plaintiff.

*Melissa M. Devine*, Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington DC, for the defendant. With her on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Franklin E. White, Jr.*, Assistant Director. Of Counsel on the brief was *David P. Lyons*, Attorney, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce.

Musgrave, Senior Judge: The plaintiff, Toscelik Profil ve Sac Endustrisi A.S. ("Toscelik"), a producer of subject merchandise for the Turkish domestic and export markets, filed this action to contest *Circular Welded Carbon Steel Pipes And Tubes From Turkey: Final Results of Countervailing Duty Administrative Review; Calendar Year 2012 and Rescission of Countervailing Duty Administrative Review, in Part*, 79 Fed. Reg. 51140 (Aug. 27, 2014) ("*2012 CVD Review*"). The matter concerns Toscelik's net subsidy rate, which was incorporated into the *2012 CVD Review* results by reference to the prior *2011 CVD Review* segment of the CVD

proceeding.[1]    The plaintiff challenges the posture of the *2012 CVD Review* due to its successful

litigation of the *2011 CVD Review.  See Toscelik Profil ve Sac Endustrisi A.S. v. United States,* 38

CIT ___, Slip Op. 14-126 (Oct. 29, 2014) ("*Toscelik I*"), remand results sustained, 39 CIT ___, Slip

Op. 15-28 (Apr. 1, 2015) ("*Toscelik II*").  The defendant, International Trade Administration, U.S.

Department of Commerce ("ITA" or "Commerce"), argues Toscelik failed to exhaust its

administrative remedies.

## I. *Background*

Prior to publication of the review for year 2011, Commerce initiated the year 2012

review and selected Borusan Mannesmann Boru Sanayi ve Ticaret A.S. (Borusan) as the sole

mandatory respondent.  Respondent Selection Memorandum at 4-5 (May 17, 2013), PDoc 17.

Toscelik participated in the proceeding by filing comments concerning respondent selection matters.

*See* Toscelik Respondent Selection Comments (May 13, 2013), PDoc 13.

Commerce published the *2011 CVD Review* on October 30, 2013, assigning Toscelik

a subsidy rate of 0.83 percent. 78 Fed. Reg. 64917.  On November 5, 2013, Toscelik appealed that

proceeding here.  In its opening brief, Toscelik argued that certain deficiencies in the calculation of

a land benchmark rendered the 2011 subsidy rate invalid. *See* Pl. Mot. for Judgment Upon the

Admin. Record, *Toscelik Profil ve Sac Endustrisi A.S. v. United States*, No. 13-00371 (CIT Mar. 21,

2014), ECF No. 28.

---

[1]    *Circular Welded Carbon Steel Pipes And Tubes From Turkey: Final Results of Countervailing Duty Administrative Review; Calendar Year 2011*, 78 Fed. Reg. 64916 (Oct. 30, 2013) and accompanying issues and decision memorandum ("*2011 CVD Review*").

On April 23, 2014, Commerce published its preliminary results of the 2012 review. *Circular Welded Carbon Steel Pipe and Tube Products from Turkey*, 79 Fed. Reg. 22625 (Apr. 23, 2014) (prelim. determ.) (2012 Preliminary Results), and accompanying preliminary decision memorandum (Apr. 17, 2014) ("*PDM*"), PDoc 109.  Commerce calculated a *de minimis* rate for Borusan.  *PDM* at 1.  However, in accordance with its practice, Commerce did not assign Toscelik a *de minimis* rate as well; rather, Commerce assigned Toscelik the subsidy rate of 0.83 percent that Toscelik had received in the *2011 CVD Review* results. *Id*. at 7.

Pursuant to its regulations, Commerce provided 30 days for interested parties to submit case briefs and five days thereafter to submit rebuttal briefs on the 2012 Preliminary Results. 79 Fed. Reg. at 22627.  The government emphasizes that Toscelik did not file case or rebuttal briefs, nor did Toscelik comment upon the 2012 Preliminary Results in some other form or request an extension to submit arguments.  *See* Admin. Record at 15-35, ECF No. 16.

In the *2012 CVD Review*, published in August 2014, Commerce continued to apply the 0.83 percent subsidy rate to Toscelik as in the 2012 Preliminary Results. 79 Fed. Reg. at 51141. Commerce did not evaluate or address arguments regarding the subsidy rate Toscelik received because the record contained no challenges to that rate.  *See id.*; *see also IDM* at 3-4.

Thereafter, on February 13, 2015, in its final remand results concerning the *2011 CVD Review*, Commerce revised the land benchmark used to calculate Toscelik's 2011 subsidy rate, lowering Toscelik's subsidy rate for the 2011 period of review from 0.83 percent to 0.44 percent. *Final Results of Redetermination Pursuant to Court Remand, Toscelik Profil ve Sac Endustrisi AS*

*v. United States*, No. 13-00371 (Feb. 13, 2015). Those results were sustained on April 1, 2015.

*Toscelik II*, Slip Op. 15-28.

## II. *Jurisdiction and Standard of Review*

Toscelik has standing under 19 U.S.C. §1516a(d) and 28 U.S.C. §2631(c), and judicial review concerns whether Commerce's countervailing duty determinations are unsupported by substantial evidence on the record or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i). *See Royal Thai Government v. United States*, 436 F.3d 1330, 1335 (Fed. Cir. 2006). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951).

Pursuant to 28 U.S.C. § 2637(d), the court "shall, where appropriate, require the exhaustion of administrative remedies." The court "generally takes a 'strict view' of the requirement that parties exhaust their administrative remedies." *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007) (citations omitted).[2]

---

[2] "A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the [agency] of an opportunity to consider the matter, make its ruling, and state the reasons for its action." *Unemployment Comp. Comm'n of Alaska v. Aragon*, 329 U.S. 143, 155 (1946). Commerce's regulations also require that a party's administrative review case brief "present all arguments that continue in the submitter's view to be relevant to [Commerce's] final determination or final results, including any arguments presented before the date of publication of the preliminary determination or preliminary results." 19 C.F.R. § 351.309(c)(2); *see also Dorbest Ltd. v. United States*, 604 F.3d 1363, 1375 (Fed. Cir. 2010); *Mid Continent Nail Corp. v. United States*, 37 CIT ___, ___, 949 F. Supp. 2d 1247, 1260-61 (2013); *Pakfood Public Co. v. United States*, 34 CIT 1122, 1143-44, 724 F. Supp. 2d 1327, 1350 (2010). "The exhaustion requirement in this context is therefore . . . a requirement explicitly imposed by the agency as a prerequisite to judicial review." *Corus Staal*, 502 F.3d at 1379. "Issues that are not addressed in an administrative case brief filed with the agency are generally deemed abandoned." *Mid Continent Nail*, 37 CIT at ___ n.10, 949 F. Supp. 2d at 1261 n.10. "A violation of Commerce's regulation, therefore, supplies an independent ground for determining that an argument has not been exhausted." *Samsung Electronics Co. v. United States*, 72 F. Supp. 3d 1359, 1370 (2015).

III.  *Discussion*

Because Commerce recalculated via remand the subsidy rate underlying Toscelik's 2011 rate, Toscelik's opening brief argues that those results should extend to this 2012 review.  *See* Pl's Br. at 4-6; Compl. ¶21.  The government's sole objection is that Toscelik failed to exhaust that argument before Commerce in the first instance.  *See generally* Def's Resp.

The government posits that Toscelik "chose" not to exhaust even though the issue of the 0.84 percent subsidy rate was "squarely in play" in the 2012 Preliminary Results.  Def's Resp. at 6, referencing *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1380-81 (Fed. Cir. 2013) ("*Bestpak*"); *QVD Food Co. v. United States*, 34 CIT 1166, 1176, 721 F. Supp. 2d 1311, 1320 (2010), *aff'd*, 658 F.3d 1318 (Fed. Cir. 2011); *Gerber Food (Yunnan) Co. v. United States*, 33 CIT 186, 197-98, 601 F. Supp. 2d 1370, 1381-82 (2009).  The government contends that the "same procedural posture existed administratively", requiring exhaustion, as what Toscelik is attempting to accomplish here judicially,[3] *see id*. at 7-8, and that the *2012 CVD Review* is an entirely separate proceeding, *id*. at 8-9 (citation omitted).  "Commerce is not required to consider information beyond the administrative record in question", *id*. at 9, referencing *Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1277 (Fed. Cir. 2012),[4] and "[t]he court may not force Commerce to reach outside

---

[3] *See*, *e.g.*, Pl. Br. at 4 ("Toscelik ha[s] preserved the issue by appealing from the 2012 final results."); Compl. ¶21 ("[i]nsofar as Commerce has expressly linked the final result of the 2012 review to the final result of the 2011 review, which is currently upon appeal, therefore, the final results of the 2012 review should be determined in accordance with the outcome of Case. No. 13-00371").

[4] "If, upon the coming down of the order litigants might demand rehearings as a matter of law because some new circumstance has arisen, some new trend has been observed, or some new fact discovered, there would be little hope that the administrative process could ever be

(continued...)

the administrative record in question even if a particular document or argument would, if raised at the administrative level, be relevant to Commerce's determination", *id*. (citation omitted). The government therefore argues "[i]t is . . . of no moment that the arguments Toscelik made in the 2011 review and ensuing litigation ultimately earned it a redetermined subsidy rate for 2011." *Id*.

Distinguishing Toscelik's reliance upon *Maverick Tube Corp. v. United States*, *see* 39 CIT ___, Slip Op. 15-59 (June 15, 2015) at 12, on that ground that Toscelik in fact pursued and exhausted administrative remedies on the issue in that case,[5] and distinguishing the remand order relating to the *2011 CVD Review* from *Toscelik I* on the bases that not only did Commerce's request for voluntary remand moot the exhaustion argument raised by one of the domestic industry petitioners, *see Toscelik I*, Slip Op. 14-126 at 11 n.11, but also that in the original administrative proceeding Toscelik had in fact advocated for the revised benchmark in its rebuttal brief in response to petitioners' case brief,[6] the government in the end contends that Toscelik fails to support its contention that any argument regarding the use of its 2011 rate would have been fruitless or that Commerce would not have considered and addressed such arguments; that even given a substantial likelihood that Commerce would have rejected them, "it still would have been preferable, for purposes of administrative regularity and judicial efficiency" for parties "to make arguments in case

---

[4] (...continued)
consummated in an order that would not be subject to reopening." 678 F.3d at 1277 (citation omitted).

[5] *See Oil Country Tubular Goods from Turkey*, 79 Fed. Reg. 41964 (July 18, 2014) (final determ.) and attached issues and decision memorandum at cmt. 11 (addressing Toscelik's arguments concerning the land benchmark calculated in the 2011 review of circular welded pipe from Turkey).

[6] *See Circular Welded Carbon Steel Pipes And Tubes From Turkey*, 78 Fed. Reg. 64916 (Oct. 30, 2013) (final determ.), and accompanying IDM at cmt. 4.

brief[s] and for Commerce to give its full and final administrative response in the final results." *See* Def's Resp. at 12, quoting *Corus Staal BV v. United States*, 502 F.3d 1370, 1380 (Fed. Cir. 2007). The government argues Toscelik has neither satisfied this "standard" nor explained how Commerce would have been unwilling or unable to consider its arguments during the 2012 administrative review; specifically with respect to Toscelik's assertion that filing a case brief would not have prompted Commerce to do "anything other than what was done at the preliminary phase", Pl. Br. at 5, the government contends that this is "unsupported speculation" and that Toscelik provides no other reason to presume that Commerce "would have overlooked" arguments on the 2012 rate.

Here, the government again emphasizes that during the 2011 review Toscelik took administrative steps to oppose the 2011 subsidy rate and that the final results for the *2011 CVD Review* preceded the 2012 Preliminary Results by more than six months; however, Toscelik "declined" to submit arguments on the 2012 Preliminary Results and therefore Toscelik "denied Commerce the opportunity to consider its arguments concerning the 2012 Preliminary Results and the petitioners the opportunity to comment upon Toscelik's arguments", *i.e.*, Toscelik "failed to alert Commerce during the review that it was at risk of applying a rate that could be changed following a remand in Court. No. 13-00371." Def's Resp. at 13, quoting *Indep. Radionic Workers of America v. United States*, 18 CIT 851, 863, 862 F. Supp. 422, 434 (1994) ("an administrative agency 'is obliged to deal with a large number of like cases'. . . . [and o]bjecting to [ITA's] action in the second administrative review at least would have put ITA 'on notice of the accumulating risk of . . . reversals' in these multi-issue serial reviews") (quoting *United States v. L.A. Tucker Lines, Inc.*, 344

U.S. 33, 37 (1952)).  Restating its position, the government argues the futility exception should not apply here "[i]n the interests of fairness to the agency[.]" *Id*. quoting *id*.

Toscelik raises several points in reply.  First, Toscelik contends the government does not dispute that the 0.83 percent rate that Commerce applied to Toscelik (namely, the *2011 CVD Review* results as they concerned Toscelik's rate) was ultimately deemed unlawful and was corrected, on remand, to *de minimis* 0.44 percent,[7] *i.e.*, the government does not dispute that the 0.83 percent applied to Toscelik in the *2012 CVD Review* is an incorrect rate, and that the government's sole argument is that Toscelik failed to exhaust its administrative remedies in the *2012 CVD Review*.

Second, Toscelik argues it was under no obligation to file a case brief in this proceeding because there was no administrative record created during the 2012 review concerning Toscelik's CVD rate, Commerce simply reached back and "plucked" its result from the final results of the 2011 review without incorporating any substantive record concerning the underlying calculation.  There was therefore, Toscelik argues, no record on the basis of which it could frame arguments in a case brief.

Third, Toscelik emphasizes it did not, and does not, argue that it was unlawful or incorrect for Commerce to reach back to the previous review for its result, it argues that Commerce reached back to a defective result, and that the defect could only be litigated, as it was, in an appeal from the eleventh review, which would then become applicable to the twelfth review *ipso facto*.

---

[7] *See Toscelik II*, Slip Op. 15-28; *see also Circular Welded Carbon Steel Pipes and Tubes from Turkey: Notice of Court Decision Not In Harmony With Final Results of Countervailing Duty Administrative Review and Notice of Amended Final Results of Countervailing Duty Administrative Review; 2011*, 80 Fed. Reg. 43709 (July 23, 2015).

Expanding on these points, Toscelik argues the present case is distinguished from all those cited in the government's response brief by the fact that there was no administrative record in the present case against which Toscelik could raise arguments in a case brief. For example, if Commerce had incorporated the calculations of the eleventh review into this twelfth, then Toscelik could have argued that specific aspects of the calculation were in error, but Commerce simply took the ultimate number from the final results of the eleventh review as the final result for Toscelik in the twelfth review. Again: Toscelik does not claim that Commerce acted unlawfully in reaching back to the eleventh review for its result in the twelfth or was required to incorporate any part of the record of the eleventh review into the twelfth, nor does Toscelik take issue with Commerce's policy of applying to a non-mandatory respondent the result of the most recently completed review of that company when such a result exists; Toscelik emphasizes its belief, generally speaking, that this is a reasonable exercise of Commerce's discretion and therefore unobjectionable.

Based on the foregoing, it is therefore difficult to discern what argument Toscelik might have made in an administrative case brief to espouse a different outcome. Toscelik could not argue against the "reach-back" policy, nor could it plausibly argue that Commerce should place the twelfth review on hold until the flaws of the eleventh review were litigated, since Commerce is on a statutory schedule that permits no such suspension. 19 U.S.C. §1675(a)(3). Nor could Toscelik argue that the "facts" did not support the use of the 0.83 percent rate, since there were no facts relevant to Toscelik that were actually determined in the twelfth review: the record in that respect is a void. Nor could Toscelik argue that the results of the eleventh review were erroneous, because such an argument is properly presented only in the eleventh review, where there was a record on

which to base such an argument. The flaw in the final result of the *2012 CVD Review* is not a flaw

*of* the twelfth review but rather a flaw of the eleventh, and there is no argument Toscelik could have

made during the twelfth review that could possibly have resulted in redress of the error of the

eleventh review. As such, the court agrees with Toscelik that the fact that there was no record on

which to base any argument translates into a "useless formality" defense against an exhaustion

argument; *see Jiaxing Brother Fastener Co. v. United States*, 34 CIT ___, ___, 751 F. Supp. 2d

1345, 1355-56 (2010). That is, it would have been useless for Toscelik to argue in the twelfth review

that Commerce could correct the error of the eleventh review, particularly when the eleventh review

was *sub judice*. It would also have been useless for Toscelik to assert that Commerce's "reach-back"

policy was an abuse of discretion, when Toscelik agrees that the reach-back policy is lawful.[8]

The government asserts that "[i]n the review at issue in this case, Toscelik at a

minimum could have challenged Commerce's application of the 0.83 subsidy rate, and the

methodology through which it was calculated, because that rate was being challenged in Court No.

13-00371." Def's Resp. at 6. However, the defending position is contrary to fact, as there was no

record in the twelfth review on which to predicate an attack on the facts or methodology underlying

the 0.83 percent rate of the eleventh review.

Similarly, the government asserts that "the issue Toscelik now presents to this Court

was 'squarely in play[,]' yet Toscelik chose not to file a case brief at all." To the contrary, the

---

[8] *Cf. Diamond Sawblades Manufacturers' Coalition v. United States*, 35 CIT ___, Slip Op. 11-137 (Nov. 3, 2011) (noting the domestic industry coalition's acknowledgment that it would be "improper to preserve [the coalition's] challenge to the LTFV determination by 'challenging' the section 129 determination (with which [the coalition] avers it has no substantive contention), simply in order to bring . . . revocation [of the antidumping duty order] under the ambit of [the coalition's] challenge to the LTFV determination").

lawfulness of the eleventh review result was not squarely in play in the twelfth review; Commerce selected the ultimate number, 0.83 percent, from the final results of the *2011 CVD Review*, but there was no record underlying that number against which to argue. The twelfth review is a purely derivative action; it turns wholly on the lawfulness *vel non* of the eleventh review, and has no independent authority or correctness. In other words, there was nothing in the twelfth review about which to write a case brief.

The government also claims that *Bestpak*, *supra*, compels the conclusion that Toscelik's useless-formality defense is unavailing. However, the core issue in *Bestpak* concerning exhaustion was whether that plaintiff's failure to raise an argument concerning a particular invoice that was part of the record under review constituted a failure to exhaust. That is distinct from the present case in that the plaintiff in *Bestpak* had the administrative ability to argue that the invoice of record supported its position and failed to take advantage of that, whereas in the case at bar there is no factual record from which Toscelik could argue that the result was wrong. Indeed, in all the cases cited by the government, there was a record on which the plaintiffs could have based the arguments that were deemed to have been waived.

The remaining arguments of the government are unpersuasive. For example, the government asserts that Toscelik's "subsidy rate 'had been squarely in play' during the 2012 administrative review and was the reason for its court challenge of the 2011 Final Results", Def's Resp. at 7, but it is difficult to discern the extent of what is meant by this. As Toscelik points out, its subsidy rate was not literally "in play" during the 2012 review because Commerce selected only Borusan as a mandatory respondent, and only Borusan's rate was "in play" in the 2012 review.

Insofar as the 2012 review was concerned, Toscelik's rate was entirely derivative: if Borusan had an affirmative rate, it would have applied to Toscelik; and if Borusan had a zero or *de minimis* rate, then Toscelik's eleventh-review results would apply.  In neither case could it be said that Toscelik's subsidy rate was "in play" in the 2012 review, at least in the sense advanced by the government.

And it is also difficult to discern what is meant by "Toscelik's rate . . . was the reason for the [judicial] challenge of the 2011 Final Results."  That is true, of course, but the statement does not appear relevant to the 2012 review.  The statement seems to link the 2011 appeal to the 2012 review, but there was nothing Toscelik could possibly have argued in the 2012 review while the 2011 case was *sub judice* that could conceivably have affected the outcome of the 2012 review.

The government also notes, properly, that "Commerce is not required to consider information beyond the administrative record in question", Def's Resp. at 9, but it is difficult to discern how this truism furthers the argument here.  Toscelik is not arguing that Commerce should have reconsidered the 2011 calculations in (and that were not made part of the record of) the 2012 review, Toscelik is simply arguing that, when the 2011 result was found to be inaccurate, Toscelik was entitled to the same accuracy in the twelfth review as it received in the eleventh.  There was no available argument at the administrative level on this point, as it could only be made on appeal.

Finally, the government argues that Toscelik "does not explain how Commerce would have been unwilling or unable to consider its arguments during the 2012 review." Def's Resp. at 12. However, it is fairly clear from the briefing that Toscelik has made its precise explanation repeatedly: Toscelik could not argue that Commerce's 2012 result was not supported by the record because there was no record. Toscelik could not argue that Commerce's 2012 result was not in accordance with

law because Commerce's "reach-back" policy is reasonable and, in any event, is not the gravamen of this appeal. Similarly, it would have been, as Toscelik contends, "risible" for it to argue in a case brief that Commerce should set aside its selection of the eleventh-review final result and instead select the rate that was in Toscelik's brief as plaintiff in its appeal of the eleventh review. Not only is such an argument without a legal basis, but it is further hampered by the fact that Toscelik's brief to the court in the appeal from the eleventh review was not on the record in the twelfth review and therefore could not have been considered by Commerce in the twelfth review even if Commerce may have been otherwise inclined to do so. In fact, there was nothing Toscelik could have argued before the agency that could possibly have changed the outcome of the review.

This is the essence of the futility exception to exhaustion. Any argument Toscelik might have made would have had no impact on the final results. Other than providing repetitive "notice" to Commerce that Toscelik disagreed with the final results of the *2011 CVD Review* (a fact of which Commerce was already well aware), any case brief would have been a useless formality, without substance.

## IV. *Conclusion*

The government apparently agrees that the amended final results of the 2011 review, *i.e.*, the *de minimis* 0.44 percent, are the most accurate measure of the result for Toscelik in the 2012 review. As discussed above, the government's sole opposition to this result is that Toscelik did not file a case brief in the 2012 review; however, Toscelik persuades that any such case brief would have been a useless formality and an exercise in futility, and that the law does not require it to file such a brief merely in order to preserve its right to appeal. In view of the foregoing, the matter must

therefore be remanded for consideration of the application of the amended 2011 final result to this 2012 review.

The results of remand shall be due March 21, 2016. After filing thereof with the court, the parties shall confer and report on proceeding further on the case, including a proposed scheduling of further comments, if necessary.

**So ordered.**

/s/  R. Kenton Musgrave
R. Kenton Musgrave, Senior Judge

Dated:  December 21, 2015
            New York, New York